## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-02057-RM

JOEL W. MATZDORF;
MIKAYLA MATZDORF;
DUANGDOW C. HOYORD; and
LUKE T. HOYORD; individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

UPONOR, INC.;
UPONOR NORTH AMERICA, INC.; and
DOES 1 through 100, inclusive, whose true names are unknown,

      Defendants.

---

## DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, (1) DISMISS PLAINTIFFS' COMPLAINT AND CLASS ALLEGATIONS; AND (2) STRIKE CLASS ALLEGATIONS; AND BRIEF IN SUPPORT THEREOF

---

## <u>MOTION</u>

Defendants Uponor, Inc. and Uponor North America, Inc. (together, "Uponor"), through their undersigned counsel, hereby move to compel arbitration, or, in the alternative, to (1) dismiss the Complaint and class allegations of Joel W. Matzdorf, Mikayla Matzdorf, Duangdow C. Hoyord, and Luke T. Hoyord ("Plaintiffs"); and (2) strike class allegations (the "Motion"). This Motion is brought pursuant to the Federal Arbitration Act ("FAA"), Federal Rules of Civil Procedure 9, 12(b)(1), 12(b)(6), 12(f), 23(c)(1)(A), and 23(d)(1)(D), and the governing case law construing and applying them.

Specifically, through this Motion, Uponor respectfully requests an order compelling this action to arbitration in its entirety pursuant to the express written warranty governing the product

at issue in this matter (blue and red colored cross-linked polyethylene pipe ("PEX") allegedly manufactured by Uponor); or, in the alternative, dismissing and striking Plaintiffs' claims and class allegations, as follows:

1.      All of Plaintiffs' claims should be dismissed because Plaintiffs have failed to plead facts establishing the essential element of damages and Article III standing.

2.      Plaintiffs' non-contract claims for strict liability, negligence, and violation of the Colorado Consumer Protection Act ("CCPA") should be dismissed because they are barred by Colorado's economic loss rule.

3.      Plaintiffs' strict liability and negligence claims should be dismissed because Plaintiffs have failed to plead facts establishing a causal nexus between (i) Uponor's PEX, and (ii) an actual injury suffered by Plaintiffs.

4.      Plaintiff's misrepresentation-based strict liability claim should be dismissed because: (i) no such cause of action exists under Colorado law; and (ii) Plaintiffs have failed to plead that alleged claim with the requisite specificity under Federal Rule of Civil Procedure 9.

5.      Plaintiffs' claims for breach of implied warranty should be dismissed because: (i) the express warranty governing the Uponor PEX expressly disclaims implied warranties; (ii) Plaintiffs' implied warranty claims are barred by the applicable three-year statute of limitations under Colo. Rev. Stat. § 4-2-725; and (iii) Plaintiffs have not alleged the Uponor PEX was purchased for any use other than its ordinary purpose.

6.      Plaintiffs' claim for violation of the CCPA should be dismissed because the CCPA bars class actions and Plaintiffs also have failed to allege a viable CCPA claim on an individual basis.

7.      Plaintiffs' class allegations should be stricken in their entirety because Plaintiffs' proposed class definition is overbroad and not ascertainable on its face.

8.      The named Plaintiffs are not suitable to serve as class representatives given the allegations/deficiencies of the Complaint.

Prior to filing this Motion, Uponor complied with D.C.COLO.LCivR 7.1(a) by conferring with Plaintiffs' counsel on September 10, 2021.  Plaintiffs' counsel has indicated that they intend to oppose this Motion.

This Motion is based upon the supporting Brief below, the concurrently filed Declaration of Stacey Beissel and the exhibit thereto, the pleadings and other documents filed in this action, and any argument that the Court may entertain at any hearing on this Motion.

## BRIEF IN SUPPORT OF MOTION

### INTRODUCTION

This putative class action filed by Plaintiffs Joel W. and Mikayla Matzdorf (the "Matzdorfs") and Duangdow C. and Luke T. Hoyford (the "Hoyfords") (collectively, "Plaintiffs") against Defendants Uponor, Inc. and Uponor North America, Inc. (together, "Uponor") cannot proceed in this Court for multiple dispositive reasons premised upon both statutory law, including the Federal Arbitration Act ("FAA"), and Federal Rules of Civil Procedure 9, 12(b)(1), 12(b)(6), 12(f), 23(c)(1)(A), and 23(d)(1)(D), and the governing case law construing and applying them.

**First**, Plaintiffs' claims exclusively concern the performance of a product used in residential potable water plumbing systems—blue and red colored cross-linked polyethylene pipe ("PEX") allegedly manufactured by Uponor. However, Plaintiffs assiduously omit mention of Uponor's express written warranty governing the PEX allegedly installed in their homes (the "Warranty"), which (i) mandates arbitration of any claims between Uponor and Plaintiffs, and

(ii) prohibits Plaintiffs from maintaining any class action. (*See* Declaration of Stacey Beissel ("Beissel Decl."), at Ex. 1). Consistent with the Warranty, as well as the FAA, Plaintiffs must arbitrate their claims on an individual, not class, basis and cannot proceed in this Court.

**Second**, and notwithstanding the fact that Plaintiffs have had no performance issues with the PEX pipe purportedly installed in their homes, they speculate that the PEX in their homes *may* prematurely degrade because of Uponor's alleged process for applying colored lacquer to the piping. Significantly, the Complaint lacks any facts alleging/establishing that Plaintiffs have experienced any performance issues with the PEX, let alone suffered actual damage to their homes. This failure to plead the essential element of damages is fatal to Plaintiffs' strict liability, breach of implied warranty, negligence, and Colorado Consumer Protection Act ("CCPA") claims, precludes Article III standing, and renders Plaintiffs legally incapable of serving as class representatives with respect to the proposed class set forth in the Complaint.

**Third**, Colorado's economic loss rule bars the Complaint's non-contract claims because Plaintiffs have failed to allege any property damage to their homes caused by the PEX.

**Fourth**, Plaintiffs' strict liability and negligence claims must be dismissed because the Complaint fails to plead facts establishing a causal nexus between (i) the PEX, and (ii) an actual injury suffered by Plaintiffs. Instead, Plaintiffs improperly speculate the PEX may prematurely degrade at an unspecified time in the future and potentially cause unidentified harm to their homes.

**Fifth**, Plaintiffs' misrepresentation-based strict liability claim is prohibited because: (i) no such cause of action exists under Colorado law absent physical injury (which Plaintiffs do not, and in good faith cannot, allege); and (ii) the Complaint lacks facts regarding the "when, where, and how" Plaintiffs were exposed to and relied upon Uponor's supposed misrepresentations, in violation of Fed. R. Civ. P. 9.

**Sixth**, Plaintiffs' implied warranty claims fail because the written Warranty governing the PEX expressly disclaims implied warranties. In addition, Plaintiffs' implied warranty claims are barred by the governing three-year statute of limitations, Colo. Rev. Stat. § 4-2-725, and Plaintiffs do not allege that the PEX was purchased for any use other than its ordinary purpose, which renders their claim for breach of the warranty of fitness legally prohibited.

**Seventh**, the CCPA does not permit class actions. And, in any event, Plaintiffs have failed to allege a viable CCPA claim on an individual basis because they have not plead any deceptive business practice with the legally required specificity.

**Finally**, Plaintiffs' proposed class definition – "All persons or entities who own homes or other structures in Colorado with UPONOR PEX used as the lines and components of a potable water plumbing system"—is overbroad, not ascertainable on its face, and should be stricken in its entirety, because it: (i) includes homeowners who have not experienced leaks or "microcracks" at all, let alone actual property damage; (ii) includes homeowners who may claim to have experienced damage to other property in connection with PEX, unlike Plaintiffs, and thus Plaintiffs are not adequate representatives; (iii) lacks any temporal boundary; (iv) encompasses structures with colored and translucent PEX, the latter of which cannot experience any of the alleged "microcracks" that Plaintiffs speculate are caused by Uponor's color coating process; and (v) fails to account for differences in how homes throughout Colorado are plumbed, which may affect the claimed performance of the PEX.

## FACTUAL BACKGROUND

The Matzdorfs are the alleged owners of a home located in Erie, Colorado, which they purchased from Oakwood Homes, LLC ("Oakwood"). The Matzdorfs' home was substantially completed in March 2017. (Dkt. No. 1, ¶¶ 2, 9.) The Hoyords are the alleged owners of a home

located in Frederick, Colorado, which they purchased from Saint Aubyn Homes, LLC ("SA Homes."). The Hoyords' home was substantially completed in July 2017. (*Id.*, ¶¶ 3, 10.) Plaintiffs allege that Uponor PEX was installed as part of their homes' "potable water plumbing system" during the original construction process. (*Id.* ¶¶ 9–10). **Importantly, the Complaint lacks any allegation that the Uponor PEX installed in Plaintiffs' homes has malfunctioned, cracked, leaked, or otherwise caused any damage whatsoever to them or their homes.** (*See generally id.*) Instead, the Complaint baldly speculates that "[t]he Uponor PEX in Plaintiffs' Homes is prematurely degrading, deteriorating and/or failing and suffers from micro-cracking." (*Id.* ¶ 11.) In particular, Plaintiffs theorize that Uponor's alleged process for applying colored lacquer to the PEX is deficient because it supposedly includes "an oxidizing step" that "causes the outside surface of the PEX to become "depleted of antioxidants" and to "prematurely become[] brittle and develop[] microcracks when the tubing is expanded during installation," which can purportedly lead to leaks and property damage. (*Id.* ¶¶ 15–17.)  Plaintiffs do not allege any facts substantiating this theory or establishing that the PEX in their homes has become prematurely brittle or cracked. (*Id.*)

Plaintiffs continue their practice of setting forth vague and generic assertions in the Complaint by further alleging that an unspecified Uponor "sales catalog" states that Uponor's PEX was "the highest quality PEX tubing available, and that its cross-chemical bonding process gave it 'superior characteristics.'" (*Id.* ¶ 24). Plaintiffs also reference a link on Uponor's website stating that its PEX has "superior resistance to stress-crack corrosion" and will suffer "no micro-cracking during expansion."  (*Id.* ¶ 25). Plaintiffs do not allege that they – or their respective builders, or anyone else involved in the selection, purchase, installation, and/or construction of their homes' plumbing systems – actually saw, considered, or relied upon these alleged statements.

In making the foregoing allegations, Plaintiffs omit the fact that the Uponor PEX allegedly installed in their home is subject to, and governed by, an express written Warranty that, among other things, contains the following mandatory arbitration provision covering any and all claims and disputes between Uponor and Plaintiffs as to the PEX:

> **Warranty Claim Dispute Process:**
>
> In the event claimant and Uponor are unable to resolve a claim through informal means, the parties shall submit the dispute to the American Arbitration Association or its successor (the "Association") for arbitration, and any arbitration proceedings shall be conducted before a single arbitrator in the Minneapolis, Minnesota metropolitan area. NOTWITHSTANDING THE FOREGOING, NEITHER THE CLAIMANT NOR UPONOR, INC. SHALL BE ENTITLED TO ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS, AND NEITHER THE CLAIMANT NOR UPONOR SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS WITH ANY OTHER PARTIES IN ARBITRATION OR IN LITIGATION BY CLASS ACTION OR OTHERWISE.

(Beissel Decl., Ex. 1 at p. 2, "Warranty Claim Dispute Process").

The Warranty also expressly disclaims all other warranties, express and implied:

> THIS LIMITED WARRANTY IS THE FULL EXTENT OF EXPRESS WARRANTIES PROVIDED BY UPONOR, AND UPONOR HEREBY DISCLAIMS ANY WARRANTY NOT EXPRESSLY PROVIDED HEREIN, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE PRODUCTS COVERED HEREUNDER.

(*Id.* p. 2, "Miscellaneous").

ARGUMENTS AND CITATION TO AUTHORITY

**I.     The Court Must Dismiss or Stay This Action and Compel Plaintiffs to Arbitrate.**

The FAA "requires courts to enforce private arbitration agreements," *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 536 (2019), "save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[1] Under the FAA, a court should compel arbitration if it finds that: (1) a valid arbitration agreement exists between the parties; and (2) the dispute before it falls within the scope of the agreement. *Id.* When determining the scope of an arbitration agreement, any "[d]oubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960); *see also McWilliams v. Logicon Inc.*, 143 F.3d 573, 576 (10th Cir. 1998). The Supreme Court has "long recognized and enforced a 'liberal federal policy favoring arbitration agreements.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Consistent with these governing rules, the Court here must dismiss or stay this action and compel arbitration because a valid agreement to arbitrate exists covering Plaintiffs' claims.[2]

---

[1] The FAA covers "contracts 'evidencing a transaction involving commerce[,]'" which "requires some nexus with interstate commerce." *In re Touchstone Home Health*, 572 B.R. 255, 266-267 (Bank. D. Colo. 2017). This is an "ultra-broad" and "low" standard that "many – perhaps most – commercial contracts" satisfy. *Id.* at 267-268. Indeed, the "FAA reaches the broadest amount of commercial activity allowed by the Constitution[,]" including the movement of goods and supplies between parties from different states. *Jerry Erwin Assocs., Inc. v. Estate of Asher*, 290 F. Supp. 3d 1213, 1249 (D.N.M. 2017). Here, Plaintiffs allege that a purportedly defective product manufactured by Uponor – a Minnesota company that sells PEX "throughout the United States" – was installed in their homes in Colorado. (Dkt. No. 1, ¶¶ 2-5, 9-10). Accordingly, the FAA applies.

[2] Section 3 of the FAA provides that when addressing a motion to compel arbitration pursuant to an arbitration agreement, the court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. In applying the FAA, "the majority of federal courts," including in this Circuit, have held "that a case may be dismissed, rather than stayed, when all claims therein are arbitrable." *Am. Family Mut. Ins. Co. v. Tamko Bldg. Prod., Inc.*, 178 F. Supp. 3d 1121, 1129

A.   <u>**Plaintiffs Are Bound by the Warranty as Intended Beneficiaries**</u>.

The Warranty is binding on Plaintiffs as "the owner[s] of the applicable real property" involved in this matter. (Beissel Decl., Ex. 1 at p. 1.) That includes the agreement to arbitrate contained in the Warranty. (*Id.*, Ex. 1 at p. 2, "Warranty Claim Dispute Process".) All PEX sold by Uponor in the United States between October 15, 2012 and the present is subject to and governed by a written limited product warranty, including the PEX allegedly installed in Plaintiffs' homes. (*Id.*, ¶ 6.) During that same period of time, the Warranty was continuously published and publicly available on Uponor's website. (*Id.*, ¶ 7.) As established below, Plaintiffs—having purchased the subject homes from Oakwood and SA Homes, the original owners responsible for installation of the PEX in the first place—are beneficiaries of the Warranty, who are bound by its terms under Colorado law. *See Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987) (in determining whether an agreement to arbitrate exists, federal courts apply state contract law); *see also Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013) (same).

Under Colorado law, a non-signatory to an arbitration agreement is bound to arbitrate if it is a beneficiary of the contract containing the arbitration clause. *N.A. Rugby Union LLC v. United States of Amer. Rugby Football Union*, 442 P.3d 859, 866 (Colo. 2019) ("Non-signatories who are intended third-party beneficiaries of an agreement containing an arbitration clause are bound by that agreement."). A non-signatory is a third-party beneficiary when there is "an intent to benefit [the] third party [which is] apparent from the construction of the contract in light of all surrounding circumstances, and the intent of the parties is the key inquiry when determining whether a non-

---

(D. Colo. 2016) (citing cases). Here, Defendants request dismissal of the action consistent with the language in the Warranty and, as discussed below, all claims are arbitrable. Alternatively, the Court should stay the action until Plaintiffs have completed the arbitration process.

signatory is a third-party beneficiary entitled to enforce the agreement." *Everett v. Dickinson & Co.*, 929 P.2d 10, 12 (Colo. App. 1996).

Here, Plaintiffs are the beneficiaries of the Warranty since Uponor on the one hand and Oakwood/SA Homes on the other, clearly understood and intended for the Warranty to transfer and inure to the benefit of Plaintiffs, as the end-purchasers of the homes following their construction. Furthermore, as the alleged owners of the homes in which the PEX is purportedly installed, Plaintiffs fall squarely within the scope of intended beneficiaries of the Warranty which is directed to "the owner of the applicable real property in the United States". (Beissel Decl., Ex. 1 at p. 1.) Indeed, Plaintiffs have **judicially admitted** they are persons "who would reasonably be expected to use, consume and/or be affected by" Uponor's PEX. By itself, this binding concession mandates a finding that Plaintiffs are beneficiaries of the Warranty who are bound by its terms. (Dkt. No. 1 ¶ 67, *see also id.* at ¶¶ 55–56.)  *See Prograde Ammo Grp. LLC v. Perry*, 2015 WL 1064266, at *4 (D. Colo. Mar. 9, 2015) ("Allegations in a complaint . . . are binding judicial admissions, which can properly be entertained on a motion to dismiss.").

Also, as noted above, the plain language of the Warranty makes clear that it was intended to cover and govern any "owner of the applicable real property" containing Uponor PEX.  (Beissel Decl., Ex. 1 at p. 1.) Consistent with that plain language, Uponor understands and intends that its Warranty will ultimately cover, and inure to the benefit of, owners who acquire homes containing PEX from builders/developers. (*Id.* ¶¶ 8–9). It also is axiomatic that builders, like Oakwood and SA Homes, intend for the PEX Warranty to benefit subsequent home purchasers/owners—indeed, a developer's entire business model is predicated on building and then selling homes, together with all installed components and their corresponding warranties, such as PEX pipe. (Dkt. No. 1 ¶¶ 55– 56, 67 (admitting that Plaintiffs are "homeowners/end users" who "would reasonably be expected

to . . . have UPONOR PEX as a water plumbing system installed in their homes and other structures" and "who would reasonably be expected to use, consume and/or be affected by UPONOR PEX.").)

Moreover, Colorado statutory law is clear that "[a] seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume, or be affected by the goods . . . ." Colo. Rev. Stat. § 4-2-318.  This is true even when a warranty arguably limits an end-user's remedies.  *See, e.g.*, *Wenner Petroleum Corp. v. Mitsui & Co. (U.S.A.)*, 748 P.2d 356, 357 (Colo. App. 1987) (disclaimer of implied warranty contained in express warranty between distributor and importer was binding on end-user and purchaser of materials). This rule, together with the foregoing law and facts, require a finding that the Warranty was intended to benefit, and is binding upon, Plaintiffs as end-purchasers and alleged owners of homes purportedly containing Uponor PEX. *See also, e.g.*, *Thome v. Layne Energy Sycamore, LLC*, 2006 WL 1488895, at *3 (D. Colo. May 30, 2006) (arbitration clause was enforceable when plaintiffs derived a benefit from the contact at issue through their assigned interest).

### B.      The Warranty's Arbitration Provision Covers Plaintiffs' Claims.

The Warranty's arbitration provision plainly covers and requires the arbitration of Plaintiffs' claims in this action on an individual, not class, basis.

In determining whether claims are covered by an arbitration clause, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Thus "there is a presumption of arbitrability in the sense that [an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs. v. Communs. Workers of Am.*, 475

U.S. 643, 650 (1986). Here, the Warranty provides that "[i]n the event" Uponor and a homeowner/claimant "are unable to resolve a claim" between them "through informal means," then those "parties shall submit the dispute" to binding arbitration before the American Arbitration Association. (Beissel Decl., Ex. 1 at p. 2, "Warranty Claim Dispute Process".) This language clearly covers all claims and disputes between Uponor and a homeowner relating to the PEX. *See Western Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, 970 F. Supp.2d 1162, 1180 (D. Colo. 2013) (the "indefinite article 'a'" can mean "any"); *Hooks ex rel. NLRB v. Kitsap Tenant Support Servs.*, 816 F.3d 550, 558-559 (9th Cir. 2016) (the use of the indefinite article "a" has a "generalizing force" and "is synonymous with" the word "any"). Indeed, the Warranty's arbitration provision does not exclude any claims whatsoever, and the Warranty instead broadly governs "any claims arising from breach of contract, breach of warranty, tort, *or any other claim* arising from the sale or use of Uponor's products. (Warranty at p. 2, "Miscellaneous").

When confronted with arbitration clauses of similar scope, courts in the Tenth Circuit have compelled arbitration. *See Thome*, 2006 WL 1488895, at *3 (arbitration clause covered plaintiffs' claims where it provided that, "[i]n the event of a dispute, the parties shall arbitrate"). The Court should do so here and compel arbitration of Plaintiffs' claims on an individual, not class, basis. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339-351 (2011) (class action waivers in agreements to arbitrate are enforceable); *Vernon v. Qwest Commc'ns Int'l, Inc.*, 925 F. Supp. 2d 1185, 1196 (D. Colo. 2013) (enforcing class action waiver in arbitration agreement).

II.   **If the Court Does Not Compel Arbitration, It Should Dismiss/Strike Plaintiffs' Claims and Class Allegations.**

A.   **Plaintiffs Have Failed to Allege Any Damages or Injury in Fact.**

Plaintiffs allege causes of action for strict liability, breach of implied warranty, negligence,

and violation of the CCPA, all of which require proof of actual damages.[3]   Ignoring this basic requirement, Plaintiffs fail to plead damages or any other injury in fact, such that dismissal is warranted.

Where "[t]he plaintiffs do not allege specific facts about who, what, where, and when that establish a plausible claim," a complaint fails to provide the requisite notice of the claim and its grounds; fails to satisfy the pleading standards imposed by Rule 8(a); and is subject to dismissal under Rule 12(b)(6). *Myers v. Koopman*, 2010 WL 3843300, at *5 (D. Colo. Sept. 27, 2010); *see also Forba Holdings, LLC v. Licsac, LLC*, 2010 WL 148267, at *1 (D. Colo. Jan. 11, 2010) (dismissing breach of warranty claim that "suffer[ed] from a basic flaw: conclusory allegations"). That is precisely the case here because Plaintiffs have alleged "no facts" on "which to base [their] claim[s] that [Uponor's] products caused or contributed to [their] injury," and the "mere possibility" that those products may have done so "is not adequate to state a claim under the prevailing standards as set forth by *Twombly* and *Iqbal*." *Dittman v. DJO, LLC*, 2009 WL 3246128, at *3 (D. Colo. Oct. 5, 2009). In the present case, there simply is nothing alleged to indicate that Plaintiffs have sustained any injury related to the PEX allegedly installed in their homes.

In addition, an "injury in fact" must be alleged in order to establish Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (a party seeking to establish standing must show injury in fact be demonstrating "an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent', not 'conjectural' or 'hypothetical.'"). Notwithstanding this well-established principle, Plaintiffs fail to allege what, if any, injury they

---

[3] *See Baca v. Clark*, 2007 WL 2022054, at *4 (D. Colo. July 9, 2007) (negligence and strict liability claims require that plaintiff "sustained damages" or "injuries"); *Trust Dep't of First Nat. Bank of Santa Fe, Colo. Branch v. Burton Corp.*, 2013 WL 4884483, at *6-7 (D. Colo. Sept. 11, 2013) (claims for breach of implied warranties require proof that the breach caused "injuries, damages, or losses," and the Colorado Consumer Protection Act also requires a showing of injury).

have actually sustained from purportedly having Uponor PEX in their homes. Plaintiffs merely speculate, in the broadest possible and conclusory terms, that "[t]he Uponor PEX in Plaintiffs' Homes is prematurely degrading, deteriorating and/or failing and suffers from micro-cracking," (Dkt. No. 1 ¶ 11.) Plaintiffs then theorize that defects in Uponor's PEX may cause the piping to "crack, fail to perform when put to their intended use, leak and reduce their normal useful life." (*Id.* ¶¶ 17, 27.)  But, Plaintiffs fail to plead facts substantiating this hypothesis—indeed, Plaintiffs do not allege the PEX in their homes has manifested any performance issue at all. (*Id.* ¶¶ 9–36.) These are precisely the type of conclusory assertions that should not be countenanced at the pleading stage because Rule 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Stated simply, Plaintiffs' "naked assertion[s]" that they were injured by Uponor are insufficient to survive a Rule 12(b)(6) motion. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Carrado v. Daimler AG*, 2018 WL 4565562, at *7 (D. Colo. Sept. 24, 2018) (dismissing claims of breaches of implied warranties of merchantability and of fitness for a particular purpose because plaintiffs "fail[ed] to plead more than conclusory allegations"); *Mariani v. Titeflex Corp.*, 2014 WL 3402514, at *2, 6-7 (D. Colo. July 10, 2014) (dismissing negligence and strict products liability claims for failure to sufficiently allege damages or injury).

## B.   The Economic Loss Rule Bars Plaintiffs' Non-Contract Claims.

Even assuming, *arguendo*, that Plaintiffs could meet their pleading obligations with respect to damages, the economic loss rule bars the Complaint's non-contract claims. "[A] party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law. Economic loss is defined generally as damages other than physical harm to persons or property."  *Town of Alma v. AZCO*

*Const., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000) (footnote omitted). An "independent duty of care must be separate from any 'contractual obligations between the parties' and '[t]his independent duty should not be confused with the reasonable duty of care underlying tort claims generally." *Simantob v. Mullican Flooring, L.P.*, 527 F. App'x 799, 803-04 (10th Cir. 2013) (citing *Hermansen v. Tasulis,* 48 P.3d 235, 240 (Utah 2002) (in which the Utah Supreme Court "expressly adopt[ed] [the Colorado Supreme Court's] interpretation of the economic loss rule")); *see also AZCO Const., Inc.*, 10 P.3d at 1263. Indeed, even when the defendant has contractually agreed to a duty that mirrors the common law duty of care as part of a "network of interrelated contracts" involving a construction project, that "duty of care" is not independent of the contract and the economic loss rule still applies. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004); *see also Terrones v. Tapia*, 967 P.2d 216, 220 (Colo. App. 1998) (economic loss rule barred owner's negligence claim against contractor even though parties did not have a direct contractual relationship because source of contractor's duty was contractual); *Scott Co. of Cal. v. MK–Ferguson Co.,* 832 P.2d 1000, 1005–06 (Colo. App. 1991) (economic loss rule barred subcontractor's negligence and misrepresentation claims against owner even though they did not have a direct contractual relationship).  Consistent with this law, the economic loss rule bars tort claims by third party beneficiaries of a contract. *See S K Peightal Engineers, LTD v. Mid Valley Real Est. Sols. V, LLC*, 342 P.3d 868, 873 (Colo. 2015) (the economic loss rule bars tort claims by both "a party to a contract that is interrelated with a defendant's duty" and "a third-party beneficiary" of the contract).

Ignoring this law, Plaintiffs claim they purchased homes containing Uponor PEX, and they now speculate the PEX *may* fail and/or cause damage *in the future*. As a matter of law, this is nothing more than a prohibited claim for economic loss based on a hypothesized risk of future

damage that may never materialize. That is precisely what the economic loss rule forbids, and Plaintiffs' non-contract claims are therefore legally barred. *AZCO Const., Inc.*, 10 P.3d at 1264-65 (where plaintiffs are "only seeking damages for the cost of repair and replacement of the water lines that were the subject of the contract," such remedies "constitute economic loss damages that must be supported by an independent duty of care to be recoverable in a negligence action."). This is especially true where (1) Uponor has contractually agreed to provide a product free from defect in the Warranty (Beissel Decl., Ex. 1); and (2) that Warranty is interrelated with Plaintiffs' purchase of their homes from Oakwood and SA Homes and inures to the benefit of Plaintiffs, such that there "is no independent duty to support" Plaintiffs' tort claims. *AZCO Const., Inc.*, 10 P.3d at 1264-65; *see also U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 358 F. Supp. 2d 1021, 1025 (D. Colo. 2005) (the economic loss rule bars "negligence and strict liability claims where economic damage is caused by the breach of a duty voluntarily assumed in contract and which results from a failure of the purposes or expectancies under that contract."). Here, Plaintiffs do not allege Defendants violated any purported duty other than the "duty to exercise reasonable and ordinary care" (Dkt. No. 1 ¶¶ 79, 88, 83), *i.e.*, the exact type of alleged "duty" which the Tenth Circuit held was insufficient to overcome the economic loss rule in *Simantob*.

Consistent with the foregoing law, the Court should (i) dismiss Plaintiffs' non-contract claims, and (ii) strike the Complaint's class allegations as to those claims. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("'a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."); *Jenkins v. CARCO Grp., Inc.*, 339 F. Supp. 3d 1223, 1231 (D. Kan. 2018) ("Because the Court dismisses Plaintiff's individual FCRA claim, her claims on behalf of the putative class must also be dismissed.").

**C.** **Plaintiffs Do Not Adequately Plead Causation for Their Strict Liability and Negligence Claims.**

Plaintiffs have also failed to adequately plead causation in support of their strict liability and negligence claims. *See Bartholic v. Scripto-Tokai Corp.*, 140 F. Supp. 2d 1098, 1106 (D. Colo. 2000) (a plaintiff alleging strict liability must plead and prove "the defect caused the plaintiff's injuries" and that "the plaintiff sustained damages."); *Nash v. Wal-Mart Stores, Inc.*, 2017 WL 5188339, at *9 (D. Colo. Feb. 15, 2017) (same with respect to negligence). Instead, the Complaint impermissibly (i) speculates that the PEX allegedly installed in Plaintiffs' homes is prematurely degrading; and (ii) impliedly presumes Plaintiffs have experienced unspecified harm due to Uponor's manufacture or design of the PEX. (Dkt. No. 1 ¶¶ 11, 26–28.) Plaintiffs do not, however, offer **any** factual allegations substantiating the assertion that the PEX is prematurely degrading at all, let alone establishing that Plaintiffs have suffered any resulting damage, injury in fact, or harm. Accordingly, dismissal is required. *See, e.g.*, *Watson v. Vista Outdoor, Inc.*, 2016 WL 11523306, at *3 (D. Colo. June 29, 2016) (dismissing strict liability claim for failure to provide sufficient facts to establish causation); *Alley v. Aurora Loan Servs. LLC*, 2011 WL 3799035, at *9 (D. Colo. July 21, 2011) (dismissing negligence claim based on "conclusory statements and unsubstantiated assumptions"). This is especially the case in light of United States Supreme Court and Tenth Circuit law holding that a plaintiff does not adequately allege causation by "plead[ing] facts that are merely consistent with a defendant's liability[.]" *Iqbal*, 556 U.S. at 678; *see also Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 n.8 (10th Cir. 1987) (rejecting reasoning that presumes a causal nexus between events based on nothing more than temporal sequence).

**D.      Plaintiffs' Misrepresentation Claim Also Fails Because It Does Not State a Viable Claim for Relief.**

In Count II of the Complaint, Plaintiffs assert a claim for strict liability based on Uponor's purported misrepresentation of facts concerning the character and quality of the PEX. (Dkt. No. 1, ¶¶ 59-68.) This claim fails as a matter of law for two reasons:

**First**, Colorado does not recognize a cause of action for strict liability based on misrepresentation absent an allegation of physical injury to the plaintiff. The seminal Colorado case on this point is *American Safety Equipment Corp. v. Winkler*, 640 P.2d 216 (Colo. 1982). In *Winkler*, the Colorado Supreme Court expressly adopted the doctrine of strict liability for misrepresentation of a product under section 402B of the Restatement (Second) of Torts. *Id.* at 218–21. In so doing, however, the Supreme Court noted that physical harm to the plaintiff was a necessary element of such a claim. *Id.* at 222. Specifically, the Court held:

> [T]o establish a prima facie case for a strict liability action under section 402B, as adopted in this state, three major requirements must be met: (1) there must be a misrepresentation of a material fact concerning the character or quality of the chattel; (2) the misrepresentation must be made to the public; and (3) ***physical harm must have resulted to a consumer from justifiable reliance upon the misrepresentation.***

*Id.* (emphasis added); *see also Hawkinson v. A.H. Robbins Co., Inc.*, 595 F. Supp. 1290, 1310 (D. Colo. 1984) (also recognizing the physical injury requirement). As previously noted, here Plaintiffs do not allege any injury at all, much less physical harm resulting from the PEX – thus, this alleged claim must be dismissed.

**Second**, Plaintiffs also fail to plead their misrepresentation claim with the requisite particularity under Rule 9. *See Hockman v. I-Flow, LLC*, 2017 WL 6622384, at *1 (D. Colo. Dec. 7, 2017). Under Rule 9, a plaintiff must allege the "who, what, when, where and how" of the alleged conduct, including "the time, place, and contents of the false representation, the identity of

the party making the false statements and the consequences thereof." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006). In disregard of these requirements, the Complaint simply tracks the elements of a misrepresentation claim without providing specific facts to substantiate the assertion that "Plaintiffs and the members of the Class reasonably relied on the misrepresentations and/or the developer/builders responsible for building their homes and other structures reasonably relied on Defendants' misrepresentations." (Dkt. No. 1 ¶ 66). For example, the Complaint is silent regarding: (i) when and how Uponor purportedly made the at-issue representations; (ii) who at Uponor supposedly made the representations; (iii) when, how, and why Plaintiffs or any other class members obtained, reviewed, and considered the representations; and (iv) why/how Plaintiffs or any other putative class members reasonably relied on the representations. While Plaintiffs alternatively assert that unnamed "developers/builders" selected the Uponor PEX based on Uponor's unspecified representations made on unidentified dates, Plaintiffs yet again impermissibly provide no facts to support this vague speculation. (Dkt. No. 1 ¶¶ 24–25, 61–66.)

**E.      The Implied Warranty Claims Are Barred by the Warranty and Are Untimely.**

Plaintiffs bring claims for breach of the implied warranty of merchantability (Count III) and breach of the implied warranty of fitness for a particular purpose (Count IV). (Dkt. No. 1, ¶¶ 69–77.) Both claims are fatally deficient for two independent reasons.

**First**, the written Warranty governing the PEX expressly disclaims the implied warranties of merchantability and fitness, and this alone bars Plaintiffs' implied warranty claims because Plaintiffs cannot have rights against Uponor that are superior to those of the original purchasers of the PEX. *See* Colo. Rev. Stat. § 4-2-318 C.R.S., Comment 1 (recognizing that contractual warranty provisions, including those that limit or exclude remedies, are "equally operative against

beneficiaries of warranties"); *Wenner Petroleum Corp.*, 748 P.2d at 357 (holding that end-user was bound by contractual warranty between distributor and importer that disclaimed implied warranties, pursuant to § 4-2-318).

**Second**, in Colorado, claims for breach of implied warranty are governed by a three-year statute of limitations pursuant to Colo. Rev. Stat. § 4-2-725, and "a breach of warranty claim accrues at the time delivery is made, 'regardless of the aggrieved party's lack of knowledge of the breach.'" *Klingemann v. Breg, Inc.*, 2012 WL 1378640, at *2 (D. Colo. Apr. 20, 2012). The limitations period is not tolled merely because the defendant purportedly withheld information about the product—thus, a plaintiff cannot avoid the limitations period through "generalized" allegations of "fraud and deceit . . . as to the public at large" without alleging that the defendant "intentionally and actively induced or tricked" the plaintiff specifically. *Id.* at 6-8. The Complaint lacks any such allegations here and given the dates of alleged substantial completion of the Plaintiffs' homes, as well as the date of filing of the Complaint, Plaintiffs' implied warranty claims are thus untimely and cannot proceed on an individual or class basis. (Dkt. No. 1 ¶¶ 9–10 (admitting Plaintiffs' homes were substantially complete and delivered to them by mid-2017, more than three-years before Plaintiffs commenced this lawsuit in July 2021)). *See also Piazza v. Ebsco Indus.*, 273 F.3d 1341, 1347 (11th Cir. 2001) ("It is by now clear that a class representative whose claim is time-barred cannot assert the claim on behalf of the class.").

### F.     Plaintiffs Also Fail to State a Claim for Breach of Warranty of Fitness.

A claim for breach of warranty of fitness for particular purpose "does not arise when a product is purchased for the ordinary purpose for which the device or product is to be used." *Hauck v. Michelin N. Am., Inc.*, 343 F. Supp. 2d 976, 987–88 (D. Colo. 2004) (citing *Weir v. Federal Insurance Company*, 811 F.2d 1387, 1393 (10th Cir. 1987) ("A reason for purchasing a particular

product beyond the ordinary reason for selecting that product must be shown in order to give rise to an implied warranty of fitness for a particular purpose.")). Plaintiffs admit that the Uponor PEX was "designed, manufactured, advertised/marketed, distributed, and/or sold" for "use in water plumbing systems[,]" and that it was installed in their homes for that purpose. (Dkt. No. 1, ¶¶ 9-10, 21.) Thus, Plaintiffs' claim for breach of the warranty of fitness must be dismissed. *See Murtagh v. Bed Bath & Beyond Inc.*, 2020 WL 4195126, at *4 (D. Colo. July 3, 2020), *report and recommendation adopted*, 2020 WL 4193553 (D. Colo. July 21, 2020).

### G.   There Is No Class Action Liability Under the CCPA and Plaintiffs Have Failed to Plead a Viable CCPA Claim Individually.

The CCPA prohibits the recovery of actual damages, treble damages for bad faith conduct, and reasonable attorney fees in class actions. Colo. Rev. Stat. § 6-1-113(2). "**Consistent with this directive, numerous courts have held that the CCPA 'creates no statutory liability for a defendant in a private class action.'**" *Murtagh*, 2020 WL 4195126, at *5 (D. Colo. July 3, 2020) (emphasis added); *see also Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1218–19 (D. Colo. 2012) (the CCPA's remedies "are not applicable in class actions [and] [b]y logical extension, the CCPA creates no statutory liability for a defendant in a private class action."); *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 2015 WL 4036319, at *2-3 (D. Colo. July 1, 2015) ("a class action for damages under the CCPA is barred"). The Court must therefore dismiss or strike the Complaint's class allegations as to Plaintiffs' CCPA claim. *Hockenbury v. Hanover Ins. Co.*, 2016 WL 552967, at *2 (W.D. Okla. Feb. 10, 2016) (recognizing court's authority to strike defective class allegations prior to discovery under Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D)).

In addition, Plaintiffs have failed to plead a viable CCPA claim individually. A valid CCPA claim requires a plaintiff to allege facts establishing the defendant has engaged in an unfair or deceptive trade practice which caused the plaintiff's injury. *Rhino Linings USA, Inc. v. Rocky*

*Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003). These allegations must be pled with particularity. *HealthONE of Denver, Inc. v. UnitedHealth Group Inc.*, 2011 WL 1135015, at *1–2 (D. Colo. Mar. 28, 2011). Specifically, a plaintiff must plead "the time, place and content of the false representations, the identity of the party making the false statements, and the consequences of the false statement." *Koch v. Koch Ind., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (citation omitted). In violation of these requirements, the Complaint here fails to specify the circumstances of Plaintiffs' purported reliance on Uponor's alleged representations, such as (i) when and how Uponor purportedly made the at-issue representations; (ii) who at Uponor supposedly made the representations; (iii) when, how, and why Plaintiffs or any other putative class members obtained, reviewed, and/or considered the representations; and (iv) why/how Plaintiffs or any other class members reasonably relied on the representations. (Dkt. No. 1 ¶¶ 24– 25, 61–66, 96.) These factual omissions mandate the dismissal of Plaintiffs' CCPA claim.  *See Murtagh,* 2020 WL 4195126, at *9 (conclusory allegations insufficient to satisfy the particularity requirement for a CCPA claim). Similarly, Plaintiffs' assertion that Uponor violated the CCPA by purportedly failing to disclose material information concerning the PEX fares no better because it is equally devoid of factual support, both as to the circumstances of the alleged non-disclosure and its purported effect on Plaintiffs. (Dkt. No. 1 ¶ 93.) *See also Hansen v. Auto-Owners Ins. Co.*, 2010 WL 749820, at *3 (D. Colo. Mar. 4, 2010) (dismissing CCPA claim when complaint fails to identify what material information defendant failed to disclose).

### H.   <u>Plaintiffs' Proposed Class is Overbroad and Not Ascertainable</u>.

Federal courts may dismiss or strike class allegations at the pleading stage when it is facially apparent that the class definition is "overbroad and includes class members regardless of whether they were ever injured." *Ramsay v. Frontier, Inc.*, 2021 WL 651021, at *7-8 (D. Colo. Feb. 19, 2021); *see also, e.g.*, *John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir.

2007) ("where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleading."); *Tietsworth v. Sears, Roebuck and Co.*, 720 F. Supp. 2d 1123, 1145–46 (N.D. Cal. 2010) (striking class allegations due to lack of ascertainability).

Here, Plaintiffs' proposed class definition—"All persons or entities who own homes or other structures in Colorado with UPONOR PEX used as the lines and components of a potable water plumbing system"—is overbroad and not ascertainable on its face, as manifest by the fact that it: (i) includes homeowners who have not experienced leaks or "microcracks" at all, let alone actual property damage; (ii) includes homeowners who may claim to have experienced physical damage to other property in connection with PEX, unlike Plaintiffs, and thus Plaintiffs are not adequate representatives; (iii) lacks any temporal boundary; (iv) encompasses structures with colored and translucent PEX, the latter of which cannot possibly experience any of the alleged performance issues that Plaintiffs speculate are caused by the color coating process; and (v) fails to account for differences in how homes throughout Colorado are plumbed, which may affect the claimed performance of the PEX. (*See* Dkt. No. 1 ¶ 41.)

Because it is clear that proceeding on a class basis here would impermissibly require mini-trials regarding the type, performance, structural integrity, color coating process (if any), and other unique circumstances applicable to each putative class member's PEX/piping system, an ascertainable class cannot be deemed to exist legally or factually, and Plaintiffs' class allegations should be dismissed/stricken entirely. *See Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112, 1155 (D. Colo. 2019) (adopting recommendation to strike class allegations where the proposed class definition was overbroad because it included putative members who were not in fact damaged); *see also, e.g., Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006)

(proposed class including all purchasers of fountain drinks after March 12, 1999 was not ascertainable because "[c]ountless members of [the] putative class could not show any damage, let alone damage proximately caused by Coke's alleged deception."); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) ("[I]f class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate.").

## CONCLUSION

For all of the foregoing reasons set forth herein, the Court should grant Uponor's Motion and (1) compel Plaintiffs to proceed with arbitration relating to their claims or, alternatively, (2) dismiss Plaintiffs' Complaint; and (3) strike/dismiss the Complaint's class allegations.

Dated: September 22, 2021

/s/ *John S. Gibbs III*
**John S. Gibbs III**
TROUTMAN PEPPER HAMILTON SANDERS LLP
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
Telephone: (404) 885-3000
E-mail: evan.gibbs@troutman.com
Attorney for Defendants

## <u>CERTIFICATE OF COMPLIANCE WITH D.C. COLO. LCivR 7.1</u>

On September 10, 2021, counsel for Plaintiffs and Defendants conferred telephonically regarding the substance of this Motion and were unable to resolve the issues raised by it. Plaintiffs have indicated that they will oppose the Motion.

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the above and foregoing was filed via the

CM/ECF system which will serve a copy on counsel of record for Plaintiffs.


*/s/ John S. Gibbs III*
**John S. Gibbs III**
TROUTMAN PEPPER HAMILTON SANDERS LLP
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
Telephone: (404) 885-3000
E-mail: evan.gibbs@troutman.com

Attorney for Defendants