## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-02057-RM

JOEL W. MATZDORF;
MIKAYLA MATZDORF;
DUANGDOW C. HOYORD; and
LUKE T. HOYORD; individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

UPONOR, INC.;
UPONOR NORTH AMERICA, INC.; and
DOES 1 through 100, inclusive, whose true names are unknown,

      Defendants.

---

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND CLASS ALLEGATIONS, OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION AND STRIKE CLASS ALLEGATIONS, AND BRIEF IN SUPPORT THEREOF

---

## <u>MOTION</u>

Defendants Uponor, Inc. and Uponor North America, Inc. (together, "Uponor") hereby move to dismiss Plaintiffs' Amended Complaint ("FAC") and class allegations, or, in the alternative, to compel arbitration and strike class allegations. This Motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(f), 23(c)(1)(A), and 23(d)(1)(D); and the Federal Arbitration Act ("FAA"). In support of the requested relief, Uponor states as follows:

1. All of Plaintiffs' claims should be dismissed because Plaintiffs have failed to plead facts establishing Article III standing.

2. If the Court does not dismiss all of Plaintiff' claims due to the lack of Article III standing, the Court should compel Plaintiffs to arbitrate their claims on an individual basis

pursuant to the arbitration clause contained in the binding express warranty ("Warranty") applicable to and governing the Uponor product at issue in this action – polyethylene pipe ("PEX").

3.      If the Court does not compel this action to arbitration, then it should dismiss Plaintiffs' claims and strike their class allegations as follows:

a.      All of Plaintiffs' claims should be dismissed because Plaintiffs have failed to plead facts establishing the essential element of damages.

b.      Plaintiffs' claims for strict liability and negligence should be dismissed because: (i) they are barred by Colorado's economic loss rule; and (ii) Plaintiffs have failed to plead facts establishing the essential element of causation.

c.      Plaintiffs' claim for breach of implied warranty should be dismissed because: (i) the Warranty governing the Uponor PEX disclaims implied warranties; and (ii) the claim also is barred by the applicable three-year statute of limitations under Colo. Rev. Stat. § 4-2-725.

d.      Plaintiffs' class allegations should be stricken in their entirety because Plaintiffs' proposed class definition is overbroad and not ascertainable on its face.

4.      In light of the foregoing, the named Plaintiffs are not suitable to serve as class representatives given the allegations/deficiencies of the FAC.

Uponor has complied with D.C.COLO.LCivR 7.1(a) by conferring with Plaintiffs' counsel on September 10, 2021 and other dates.  Plaintiffs' counsel has indicated they oppose this Motion.

## **BRIEF IN SUPPORT OF MOTION**[1]

### INTRODUCTION

This is a classic "no injury" putative class action that is prohibited under well-established federal and Colorado law. Plaintiffs are alleged Colorado homeowners who claim that PEX

---

[1] The Court previously extended the page limit to 25 pages for this Motion and Brief. (Dkt. No. 14.)

manufactured by Uponor was installed as part of the plumbing systems in their homes during the original construction process.  Significantly, Plaintiffs do not claim the PEX in their homes has experienced any performance issues in any way (*e.g.*, no leaking or other event causing damage to their homes or person)—nor do Plaintiffs allege they have performed any investigation or testing revealing that the PEX in their homes is prematurely cracking, deteriorating, or otherwise degrading.

Instead, Plaintiffs merely speculate, with no factual support, that their PEX **might be** "prematurely degrading" and/or "micro-cracking[,]" based upon the unsubstantiated hypothesis—which also is not supported by any data, research, statistics, or other facts in the FAC—that Uponor's supposed process for applying color pigment to the PEX causes the piping to experience performance issues. **Simply put, Plaintiffs have failed to plead any legally cognizable injury or damages.** To the contrary, Plaintiffs seek to subject Uponor to a federal class action based on no more than a bald assertion that their PEX **may** experience performance issues in the future due to a purported "defect" that has not manifested itself in any way, much less caused actual damage to their homes. This is precisely the type of conjectural allegations that mandate dismissal under Rule 12(b)(1) because Plaintiffs have failed to identify any non-speculative injury capable of satisfying the fundamental standing requirements of Article III of the United States Constitution.

Even if this Court does not dismiss Plaintiffs' claims entirely based on Plaintiffs' lack of standing, the FAC still cannot proceed in this Court because Plaintiffs are required to individually arbitrate their claims against Uponor. The PEX allegedly installed in Plaintiffs' homes is subject to an express Warranty that mandates arbitration of any claims between Uponor and Plaintiffs and prohibits Plaintiffs from maintaining a class action.  As the intended and legal beneficiaries of that Warranty, Plaintiffs are bound by its terms, including its arbitration clause.

Should the Court decline to dismiss the FAC on standing grounds or to compel arbitration, it should nonetheless dismiss Plaintiffs' claims under Rule 12(b)(6), as follows:  **First**, Plaintiffs have failed to plead the essential element of damages which, in turn, mandates the dismissal of each of Plaintiffs' alleged causes of action.  **Second**, Plaintiffs' strict liability and negligence claims must be dismissed because they are barred by Colorado's economic loss rule forbidding non-contract claims where, as here, the plaintiff: (i) exclusively alleges that a defective product has failed to perform as expected, and thus (ii) fails to plead facts establishing damage to any property other than the supposedly defective product itself.  **Third**, Plaintiffs' tort claims also must be dismissed because the FAC is devoid of non-speculative facts supporting Plaintiffs' theory that Uponor's alleged color coating process has caused the PEX in Plaintiffs' homes to prematurely crack, degrade, or otherwise fail to perform as expected.  **Fourth**, Plaintiffs' implied warranty claim fails because: (i) the express Warranty governing the PEX is binding upon Plaintiffs under Colo. Rev. Stat. § 4-2-318, and it expressly disclaims all implied warranties; and (ii) the claim also is facially barred by the applicable three-year statute of limitations.  *See* Colo. Rev. Stat. § 4-2-725

Finally, Plaintiffs' proposed class definition—"All persons or entities who own homes or other structures in Colorado with Uponor PEX used as the lines and components of a potable water plumbing system"—is overbroad, not ascertainable on its face, and should be stricken in its entirety, because it: (i) includes homeowners who have not experienced leaks or "microcracks" at all, let alone actual property damage; (ii) includes homeowners who, unlike Plaintiffs, may claim to have experienced damage to other property due to the PEX, such that Plaintiffs are not "adequate" class representatives for them; (iii) lacks any temporal boundary; (iv) encompasses structures with colored and translucent PEX, the latter of which cannot experience any of the alleged "microcracks" that Plaintiffs speculate are caused by the color coating process; and

(v) fails to account for differences in how homes throughout Colorado are plumbed, which may affect the claimed performance of the PEX.

## FACTUAL BACKGROUND

The Matzdorfs allegedly own a home located in Erie, Colorado, which they purchased from Oakwood Homes, LLC ("Oakwood").  The Matzdorfs' home was substantially completed in March 2017. (Dkt. No. 31 ¶¶ 2, 9).  The Hoyords are the alleged owners of a home located in Frederick, Colorado, which they purchased from Saint Aubyn Homes, LLC ("SA Homes.").  The Hoyords' home was substantially completed in July 2017.  (*Id.* ¶¶ 3, 10).  Plaintiffs allege that Uponor PEX was installed as part of their homes' "potable water plumbing system" during the original construction process. (*Id.* ¶¶ 9–10).  **Importantly, the FAC lacks any allegation that the PEX installed in Plaintiffs' homes has malfunctioned, cracked, leaked, or otherwise caused any damage whatsoever to them or their homes.**  (*See generally id.*)  Instead, the FAC baldly speculates that "[t]he Uponor PEX in Plaintiffs' Homes is prematurely degrading, deteriorating and/or failing and suffers from micro-cracking." (*Id.* ¶ 11.)  In particular, Plaintiffs theorize that Uponor's alleged process for applying colored pigment to the PEX is deficient because it supposedly includes "an oxidizing step" that "causes the outside surface of the PEX to become "depleted of antioxidants" and to "prematurely become[] brittle and develop[] microcracks when the tubing is expanded during installation," which can purportedly lead to leaks and property damage.  (*Id.* ¶¶ 13-17.)  Plaintiffs do not allege any facts substantiating this theory or establishing that the PEX in their homes has become prematurely brittle or cracked.  (*Id.*)

Plaintiffs further allege that an unspecified Uponor "sales catalog" states that Uponor's PEX was "the highest quality PEX tubing available, and that its cross-chemical bonding process gave it 'superior characteristics.'"  (*Id.* ¶ 24).  Plaintiffs also reference a link on Uponor's website

stating that its PEX has "superior resistance to stress-crack corrosion" and will suffer "no micro-cracking during expansion." (*Id.* ¶ 25). Plaintiffs do not allege that they—or their respective builders, or anyone else involved in the selection, purchase, installation, and/or construction of their homes' plumbing systems—actually saw, considered, or relied upon these alleged statements. In making the foregoing allegations, Plaintiffs omit the fact that the Uponor PEX allegedly in their homes is subject to, and governed by, an express written Warranty that, among other things, contains the following mandatory arbitration provision covering any and all claims and disputes between Uponor and Plaintiffs as to the PEX:

**Warranty Claim Dispute Process:**

In the event claimant and Uponor are unable to resolve a claim through informal means, the parties shall submit the dispute to the American Arbitration Association or its successor (the "Association") for arbitration, and any arbitration proceedings shall be conducted before a single arbitrator in the Minneapolis, Minnesota metropolitan area. NOTWITHSTANDING THE FOREGOING, NEITHER THE CLAIMANT NOR UPONOR, INC. SHALL BE ENTITLED TO ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS, AND NEITHER THE CLAIMANT NOR UPONOR SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS WITH ANY OTHER PARTIES IN ARBITRATION OR IN LITIGATION BY CLASS ACTION OR OTHERWISE. (Beissel Decl., Ex. 1 at p. 2, "Warranty Claim Dispute Process").

The Warranty also expressly disclaims all other warranties, express and implied:

THIS LIMITED WARRANTY IS THE FULL EXTENT OF EXPRESS WARRANTIES PROVIDED BY UPONOR, AND UPONOR HEREBY DISCLAIMS ANY WARRANTY NOT EXPRESSLY PROVIDED HEREIN, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE PRODUCTS COVERED HEREUNDER. (*Id.* p. 2, "Miscellaneous").

### ARGUMENTS AND CITATION TO AUTHORITY

## I.    Plaintiffs Have Suffered No Injury, Mandating Dismissal Under Rule 12(b)(1).

Whether Plaintiffs have standing to maintain this action is a threshold question of subject matter jurisdiction under Article III, Section 2 of the United States Constitution. *Steel Co. v.*

*Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).  It is proper for a federal court to address Article III standing before adjudicating the merits of the plaintiff's alleged claims or a motion to compel the plaintiff's suit to arbitration.  *See, e.g.*, *Wilcosky v. Amazon.com, Inc.*, 517 F. Supp. 3d 751 (N.D. Ill. 2021) ("The Court addresses the jurisdictional issue of Article III standing before reviewing the merits of Defendants' Motion to Compel Arbitration."); *Mejia v. Uber Techs., Inc.*, 291 F. Supp. 3d 1314, 1316-1317 (S.D. Fla. 2018) (*sua sponte* dismissing complaint for lack of Article III standing before addressing motion to compel arbitration).  Uponor therefore asks the Court to rule on Uponor's standing arguments before deciding whether to compel arbitration, and Uponor does so without waiving its right to compel arbitration of Plaintiffs' claims.

In evaluating standing, federal courts reject legal conclusions or inferences, unsupported by the facts.  *See, e.g.*, *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009).  That is because it is a plaintiff's obligation is to set forth facts, not conclusory allegations, that establish its standing.  *See, e.g.*, *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (citing multiple cases).  It is equally well settled that Plaintiffs, as the parties invoking federal jurisdiction here, have the burden of proof and persuasion as to standing.  *See Texas Independent Producers and Royalty Owners Association vs. EPA*, 410 F. 3d 964 (7th Cir. 2005) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S. Ct. 2130 (1992)).  Standing challenges "can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint."  *Gould Electronics Inc. v. U.S.,* 220 F.3d 169, 176 (3rd Cir. 2000).  Here, Uponor asserts a facial challenge.

Article III standing has three requirements: first, the plaintiff must have suffered an "injury-in-fact" that is concrete, actual, or imminent—not conjectural or hypothetical; second, the injury must have been caused by the alleged conduct; and third, the requested relief must be able to redress the alleged injury. *Lujan*, 504 U.S. at 560–61; *see also Habecker v. Town of Estes Park,*

*Colo.*, 518 F.3d 1217, 1223 (10th Cir. 2008).  In class actions, the named plaintiffs "must allege and show that *they personally* have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (emphasis added); *Rector v. City & County of Denver*, 348 F.3d 935, 946 (10th Cir.2003) (dismissing class action because defendants did not assess or attempt to collect allegedly wrongful fees from class representatives themselves).

Notwithstanding this well-established principle, Plaintiffs fail to plead any non-conclusory facts establishing they have personally experienced any injury-in-fact whatsoever with respect to the PEX allegedly in their homes.  Instead, Plaintiffs simply assert in a conclusory fashion, and speculate in the broadest terms, that the "PEX in [their] Homes is prematurely degrading, deteriorating and/or failing and suffers from micro-cracking[,]" without providing any facts substantiating that professed belief or referencing any resulting damage to their homes. (Dkt. No. 31 ¶ 11.)  While Plaintiffs then proceed to theorize that the color coating process purportedly used by Uponor causes the "outside surface" of the PEX to "prematurely become[] brittle and develop[] microcracks" that **may** result in "leaks" and other unspecified property damage at unidentified points in the future, (*id.* ¶¶ 13-17), the FAC is glaringly devoid of any data, statistics, investigative results, or other actual facts/details lending any credence to this professed hypothesis, much less establishing that Plaintiffs themselves have experienced and/or actually discovered microcracks or other indicia of premature degradation in the PEX piping purportedly installed in their own homes. (*Id.* ¶¶ 1-36.)  For example, there is no allegation that Plaintiffs removed, analyzed, and discovered microcracking in any of the PEX installed in their homes—instead, it appears the PEX in their homes continues to function exactly as intended (that is, the PEX is moving potable water through Plaintiffs' homes without issue).

Plaintiffs cannot establish standing based on the hypothetical possibility or speculative concern of future damage resulting from the PEX.  "Allegations of possible future injury do not satisfy the requirements of Art. III.  A threatened injury must be 'certainly impending' to constitute injury in fact."  *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1155 (10th Cir. 2005).  This Court and many others around the country have dismissed such claims on this basis on similar facts.  For example, in *Mariani v. Titeflex Corp.*, 2014 WL 3402514 (D. Colo. July 10, 2014), the plaintiff claimed that the corrugated stainless-steel tubing installed in her home which was manufactured by the defendant was defective because it increased the risk of fire from lightning strikes.  *Id.* at *2.  The Court found that the plaintiff lacked standing because she had suffered no actual injury (she did not allege, for example, that the piping was malfunctioning or that lightning strikes had caused a fire within the piping) and the threat of potential injury was thus only hypothetical and insufficient to confer Article III standing as a matter of law.  *Id.* at *4.  That is precisely the situation here. Plaintiffs simply speculate that the PEX in their homes **might cause damage in the future** because they subjectively believe (without support) that their PEX may be "prematurely degrading" and/or "micro-cracking."  This is insufficient as a matter of law.

Courts of Appeal throughout the country are in accord:

- *Penrod v. K&N Eng'g, Inc.*, 14 F.4th 671, 673 (8th Cir. 2021): affirming dismissal of plaintiffs' claims under "the long-standing rule that no tort claim for economic damages lies when a product is merely at risk of failing".

- *Birdsong v. Apple, Inc.*, 590 F.3d 955, 956, 961 (9th Cir. 2009): iPod purchasers who did not experience hearing loss had suffered no "injury in fact" sufficient to maintain their claims, despite the fact that other users may have experienced hearing loss.

- *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 636 (3d Cir. 1996): holding that "fear and apprehension about a possible future physical or medical consequence…is not enough to establish an injury in fact.".

- *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002): plaintiffs purchased and used a pain-relieving drug that was later recalled due to adverse side effects.  *Id.* at 317.

The plaintiffs alleged the manufacturers failed to warn of the dangers of the drug and that the drug was defective. *Id.* The Fifth Circuit held that because the plaintiffs had not suffered from any of the side effects, they suffered no injury and had no standing for their claims. *Id.* at 320–21.[2]

- *Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250, 251–55 (1st Cir. 2010): plaintiff "suffered no economic injury at all" where she "used up," without incident, dog medicine that was later recalled at FDA's request.

Likewise, federal district courts have reached the same result on similar facts. For example, in *Harrison v. Leviton Mfg. Co.*, 2006 WL 2990524, at *2 (N.D. Okla. Oct. 19, 2006), a homeowner claimed the push-in" electrical receptacles in his home were "fundamentally unsafe and increase[d] the risk of electrical fires." *Id.* at *1. He alleged the receptacles "have damaged wiring in residential homes and started electrical fires," and that he and the putative class incurred economic injury as well as "a risk of imminent danger from use of defendant's product." *Id.* But the homeowner did not allege that receptacles in his **own** home failed or malfunctioned, and this pleading deficiency mandated dismissal for lack of Article III standing "because [the plaintiff] [could not] show that he ha[d] suffered or [would] immediately suffer a concrete injury-in-fact." *Id.* at *1, 3.[3] Plaintiffs' failure to plead an injury in fact is thus fatal to their claims, and the Court should dismiss Plaintiffs' claims entirely for a clear lack of Article III standing.

---

[2] Like Plaintiffs here, the *Rivera* plaintiffs were not harmed by the at-issue product, and thus the Fifth Circuit affirmed the dismissal of their claims. *See also Ryan v. Brookdale Int'l Sys., Inc.*, 230 F. App'x 366, 368 (5th Cir. 2007) (relying on *Rivera* to affirm dismissal for lack of standing plaintiff's no-injury claims of breach of express and implied warranties); *Green v. PepsiCo, Inc.*, 2019 WL 8810364, at *3 (S.D. Fla. Apr. 12, 2019) (relying on *Rivera* to dismiss plaintiffs' claims for lack of standing in no-injury product liability case).

[3] *See also In re Fruit Juice Prod. Mktg. & Sales Pracs. Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) (dismissing case for lack of standing because the plaintiffs did not allege that the fruit juice at issue had diminished value due to presence of lead or that they would have purchased other products based on lead levels); *Estrada v. Johnson & Johnson*, 2017 WL 2999026, at *9 (D.N.J. July 14, 2017), *aff'd* 903 F.3d 278 (3d Cir. 2018) (plaintiffs lacked standing in "no-injury" products liability case); *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171 (D.D.C. 2003) (dismissing complaint on standing grounds where defendant advertised a drug as providing twelve-hour pain relief with little risk of addiction because plaintiffs did not allege that the drug failed to provide them with effective pain relief or that they suffered personal injuries from ingesting the drug).

## II.   Plaintiffs Should Be Ordered to Arbitration if Their Claims Are Not Dismissed Due to a Lack of Article III Standing.

In the event this Court does not dismiss all of Plaintiffs' claims due to a lack of Article III standing, it should compel Plaintiffs to arbitrate their claims on an individual basis pursuant to the Warranty applicable to the PEX, as well as governing federal law construing and applying the FAA. The FAA "requires courts to enforce private arbitration agreements," *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 536 (2019), "save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[4]   Under the FAA, a court should compel arbitration if it finds that: (1) a valid arbitration clause exists between the parties; and (2) the dispute before it falls within the scope of the agreement. *Id.* When determining the scope of an arbitration provision, any "[d]oubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960); *see also McWilliams v. Logicon Inc.*, 143 F.3d 573, 576 (10th Cir. 1998).  The Supreme Court has "long recognized and enforced a 'liberal federal policy favoring arbitration agreements.'"  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).   Consistent with these rules, the Court here dismiss or stay this action and compel arbitration because a valid arbitration clause exists covering Plaintiffs' claims.[5] 9 U.S.C. § 3.

### A.   Plaintiffs Are Bound by the Warranty as Intended Beneficiaries.

The Warranty is binding on Plaintiffs as "the owner[s] of the applicable real property"

---

[4] The FAA covers "transaction[s] involving commerce[,]'" which "requires some nexus with interstate commerce." *In re Touchstone Home Health*, 572 B.R. 255, 266-267 (Bank. D. Colo. 2017).  This is an "ultra-broad" and "low" standard.  *Id.* at 267-268.   Indeed, the "FAA reaches the broadest amount of commercial activity allowed by the Constitution[,]" including the movement of goods and supplies between parties from different states.  *Jerry Erwin Assocs., Inc. v. Estate of Asher*, 290 F. Supp. 3d 1213, 1249 (D.N.M. 2017).  Plaintiffs allege that a purportedly defective product manufactured by Uponor – a Minnesota company that sells PEX "throughout the United States" – was installed in their homes in Colorado. (Dkt. No. 31, ¶¶ 2-5, 9-10).  Thus, the FAA applies.

[5] The "majority of federal courts," including in this Circuit, have held "that a case may be dismissed, rather than stayed, when all claims therein are arbitrable."  *Am. Family Mut. Ins. Co. v. Tamko Bldg. Prod., Inc.*, 178 F. Supp. 3d 1121, 1129 (D. Colo. 2016) (citing cases).  Here, Uponor requests dismissal of the action or, alternatively, the Court should stay the action until Plaintiffs have completed the arbitration process.

involved in this matter. (Beissel Decl., Ex. 1 p. 1.) That includes the agreement to arbitrate contained in the Warranty. (*Id.* p. 2, "Warranty Claim Dispute Process".) All PEX sold by Uponor in the United States between October 15, 2012 and the present is subject to, and governed by, a written limited product warranty, including the PEX allegedly installed in Plaintiffs' homes. (*Id.* ¶ 6.) During that same period, the Warranty was continuously published and publicly available on Uponor's website. (*Id.* ¶ 7.) As established below, Plaintiffs—having purchased the subject homes from Oakwood and SA Homes, the original owners responsible for installation of the PEX in the first place—are beneficiaries of the Warranty, who are bound by its terms under Colorado law. *See Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987) (in determining whether an agreement to arbitrate exists, federal courts apply state contract law); *see also Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013) (same).

A non-signatory to an arbitration agreement is bound to arbitrate if it is a beneficiary of the contract containing the arbitration clause. *N.A. Rugby Union LLC v. United States of Amer. Rugby Football Union*, 442 P.3d 859, 866 (Colo. 2019) ("Non-signatories who are intended third-party beneficiaries of an agreement containing an arbitration clause are bound by that agreement."). A non-signatory is a third-party beneficiary when there is "an intent to benefit [the] third party [which is] apparent from the construction of the contract in light of all surrounding circumstances, and the intent of the parties is the key inquiry when determining whether a non-signatory is a third-party beneficiary entitled to enforce the agreement." *Everett v. Dickinson & Co.*, 929 P.2d 10, 12 (Colo. App. 1996). This long-established principle is consonant with federal and state common law throughout the country. *See, e.g.*, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (contract containing arbitration provision can be enforced against nonparties to the contract through third-party beneficiary theories); *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672 (Tex.

2006) (manufacturer deemed to be intended third-party beneficiary of an agreement requiring arbitration between retailer and customer, since "[b]y its own terms, the agreement was entered into, in part, directly for the manufacturer's benefit."); *Nguyen v. Tran*, 157 Cal. App. 4th 1032, 1037 (2007) ("an arbitration agreement may be enforced . . . against non-signatories" when "a non-signatory is a third party beneficiary of the agreement.").

Consistent with this principle, the Colorado legislature has codified the rule that **"[a] seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume, or be affected by the goods** . . . ." Colo. Rev. Stat. § 4-2-318 (emphasis added). Indeed, one of the core legislative purposes of § 4-2-318 is to clarify that "[t]o the extent that [a] contract of sale contains provisions under which warranties are excluded or modified, or remedies for breach are limited, such provisions are equally operative against beneficiaries of warranties under this section." *Id.*, Official Comment 1. Thus, in addition to obtaining the benefits of any express warranty applicable to a product, end-users are likewise subject to and bound by any limitations prescribed by that warranty. *Wenner Petroleum Corp. v. Mitsui & Co. (U.S.A.)*, 748 P.2d 356, 357 (Colo. App. 1987) (disclaimer of implied warranty contained in express warranty between distributor and importer bound end-user/purchaser of materials).

Critically, nothing in the plain language of § 4-2-318 remotely suggests, much less establishes, a legislative intent to carve-out arbitration from the ambit of limitations that are binding upon an end-user if contained in an express warranty. And, there is no basis for inferring any such carve-out, particularly where the law is clear that: (i) "[w]hen interpreting the language of a statute, the starting point is always the language of the statute itself[,]" and "[i]f the language is clear and unambiguous, the plain meaning of the statute controls," *Brown v. Eppler*, 725 F.3d

1221, 1230 (10th Cir. 2013); (ii) the Colorado legislature is "presumed to be aware of the" long-standing "judicial precedent" involving the enforcement of arbitration clauses against third-party beneficiaries when it enacted § 4-2-318, *Vaughan v. McMinn*, 945 P.2d 404, 409 (Colo. 1997); and (iii) "[i]t is the responsibility of this court to interpret statutes, not rewrite them." *True Oil Co. v. Comm'r*, 170 F.3d 1294, 1304 (10th Cir. 1999).  Here, Plaintiffs are the beneficiaries of the Warranty since Uponor on the one hand and Oakwood/SA Homes on the other, clearly understood and intended for the Warranty to transfer and inure to the benefit of Plaintiffs, as the end-purchasers of the homes following their construction.  Furthermore, as the owners of the homes in which the PEX is purportedly installed, Plaintiffs fall squarely within the scope of intended beneficiaries of the Warranty which is directed to "the owner of the applicable real property in the United States." (Beissel Decl., Ex. 1 at p. 1.)  Indeed, Plaintiffs have **judicially admitted** they are persons "who would reasonably be expected to use [Uponor PEX] in the plumbing systems in their homes."  By itself, this binding concession mandates a finding that Plaintiffs are beneficiaries of the Warranty who are bound by its terms.  (Dkt. No. 31 ¶¶ 54–56.); *see Prograde Ammo Grp. LLC v. Perry*, 2015 WL 1064266, at *4 (D. Colo. Mar. 9, 2015) ("Allegations in a complaint" are "binding judicial admissions" which can be "entertained on a motion to dismiss.").

Consistent with the plain language of the Warranty covering any "owner of the applicable property" containing Uponor PEX, Uponor understands and intends that its Warranty will ultimately cover, and inure to the benefit of, owners who acquire homes containing PEX from builders/developers.  (Beisel Decl. ¶¶ 8–9).  It also is axiomatic that builders, like Oakwood and SA Homes, intend the PEX Warranty to benefit subsequent home purchasers/owners—indeed, a developer's entire business model is predicated on building and then selling homes, together with all installed components and their corresponding warranties, such as PEX pipe. (Dkt. No. 31

¶¶ 54-56 (admitting Plaintiffs are "homeowners/end users" who "would reasonably be expected to . . . have UPONOR PEX as a water plumbing system installed in their homes" and "who would reasonably be expected to use, consume and/or be affected by UPONOR PEX.")).

Accordingly, the foregoing law and facts require a finding that the Warranty was intended to benefit, and is binding upon, Plaintiffs as end-purchasers and alleged owners of homes purportedly containing Uponor PEX. *See also, e.g.*, *Thome v. Layne Energy Sycamore, LLC*, 2006 WL 1488895, at \*3 (D. Colo. May 30, 2006) (arbitration clause was enforceable when plaintiffs derived a benefit from the contact at issue through their assigned interest).

### B.      The Warranty's Arbitration Provision Covers Plaintiffs' Claims.

The Warranty's arbitration provision plainly covers and requires the arbitration of Plaintiffs' claims in this action on an individual, not class, basis. In determining whether claims are covered by an arbitration clause, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Thus, "there is a presumption of arbitrability in the sense that [an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986). Here, the Warranty provides that "[i]n the event" Uponor and a homeowner/claimant "are unable to resolve a claim" between them "through informal means," then those "parties shall submit the dispute" to binding arbitration before the American Arbitration Association. (Beissel Decl., Ex. 1 at p. 2, "Warranty Claim Dispute Process".) This language clearly covers all claims and disputes between Uponor and a homeowner relating to the PEX. *See Western Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, 970 F. Supp.2d 1162, 1180 (D. Colo. 2013) (the "indefinite article 'a'" can mean

"any"); *Hooks ex rel. NLRB v. Kitsap Tenant Support Servs.*, 816 F.3d 550, 558-559 (9th Cir. 2016) (the indefinite article "a" has a "generalizing force" and "is synonymous with" the word "any"). The Warranty's arbitration provision does not exclude any claims whatsoever, and instead broadly governs "any claims arising from breach of contract, breach of warranty, tort, *or any other claim* arising from the sale or use of Uponor's products. (Warranty at p. 2, "Miscellaneous").

When confronted with arbitration clauses of similar scope, courts in the Tenth Circuit have compelled arbitration. *See Thome*, 2006 WL 1488895, at *3 (arbitration clause covered plaintiffs' claims where it provided that, "[i]n the event of a dispute, the parties shall arbitrate"). The Court should do so here and compel arbitration of Plaintiffs' claims on an individual, not class, basis.

## III.   If the Court Does Not Compel Arbitration, It Should Dismiss Plaintiffs' Claims Under Rule 12(b)(6).

### A.   Plaintiffs Have Not Pled the Essential Element of Damages.

Plaintiffs' failure to plead any legally cognizable injury in fact also requires the dismissal of their claims under Rule 12(b)(6) because actual damages are an essential element of each of the FAC's alleged causes of action.[6] Just as Plaintiffs' conclusory allegations of speculative harm are insufficient to confer Article III standing, they are likewise incapable of establishing damages for the purpose of a Rule 12(b)(6) motion, especially where courts must be "particularly vigilant in requiring allegations of injury or damages in products liability cases." *See, e.g., Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627-628 (8th Cir. 1999) (when "a product performs satisfactorily and does not exhibit an alleged defect, no cause of action lies.").

Indeed, "[a]n **overwhelming majority** of courts have dismissed [] unmanifested defect

---

[6] *See Baca v. Clark*, 2007 WL 2022054, at *4 (D. Colo. July 9, 2007) (negligence and strict liability claims require that plaintiff "sustained damages" or "injuries"); *Trust Dep't of First Nat. Bank of Santa Fe, Colo. Branch v. Burton Corp.*, 2013 WL 4884483, at *6-7 (D. Colo. Sept. 11, 2013) (implied warranties claims require proof that the breach caused "injuries, damages, or losses").

claims and rejected the idea that the Plaintiffs can sue manufacturers for speculative damage[,]" *id.* at 630, consistent with the majority view that: "**there is no legally cognizable injury in a product defect case, regardless of whether the claim is for fraud, violation of consumer protection statutes, breach of warranty, or any other theory, unless the alleged defect has manifested itself in the product used by the claimant**." 1 McLaughlin on Class Actions § 5:56 (13th ed.) n.19 (emphasis added) (collecting dozens of cases); *see also Mariani v. Titeflex Corp.*, 2014 WL 3402514, at *6–7 (D. Colo. July 10, 2014) (finding negligence and strict products liability claims deficient for failure to allege damages or injury).

In accordance with these governing dispositive principles, Plaintiffs' reliance on the bare assertion that "[t]he Uponor PEX in [their] Homes is prematurely degrading, deteriorating and/or failing and suffers from micro-cracking" (Dkt. No. 31 ¶ 11)—and Plaintiffs' corresponding failure to plead any facts substantiating that conclusory allegation—are defects fatal to their claims. Indeed, where "[t]he plaintiffs do not allege specific facts about who, what, where, and when that establish a plausible claim," a complaint fails to satisfy the pleading standards imposed by Rule 8(a) and is subject to dismissal under Rule 12(b)(6). *Myers v. Koopman*, 2010 WL 3843300, at *5 (D. Colo. Sept. 27, 2010); *see also Forba Holdings, LLC v. Licsac, LLC*, 2010 WL 148267, at *1 (D. Colo. Jan. 11, 2010) (dismissing breach of warranty claim that "suffer[ed] from a basic flaw: conclusory allegations"). Here, Plaintiffs have alleged "no facts" on "which to base [their] claim[s] that [Uponor's] products caused or contributed to" any actual "injury," and the "mere possibility" that those products may have done so "is not adequate to state a claim under the prevailing standards as set forth by *Twombly* and *Iqbal*." *Dittman v. DJO, LLC*, 2009 WL 3246128, at *3 (D. Colo. Oct. 5, 2009); *see also Carrado v. Daimler AG*, 2018 WL 4565562, at *7 (D. Colo. Sept. 24, 2018) (dismissing implied warranty claims because plaintiffs "fail[ed] to plead more than

17

conclusory allegations"). Accordingly, Plaintiffs' claims should be dismissed in their entirety.

### B. The Economic Loss Rule Bars Plaintiffs' Tort Claims.

Dismissal of Plaintiffs' claims for strict liability and negligence is also mandated for the independently dispositive reason that they are barred by Colorado's economic loss rule, which forbids tort claims that exclusively seek to recover damages based upon a product allegedly failing to perform as expected, absent any actual damage to a person or property other than the supposedly defective product itself.

"[W]hen a product malfunctions and causes purely economic loss through damage to the product itself . . . the reasons for imposing a tort duty are weak[,]" *E. River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871–72 (1986), and consistent with that fundamental principle, the Colorado Supreme Court has made clear that "[d]amages for the cost of repair and replacement" of a purportedly defective product "constitute economic loss damages" that are not recoverable via a tort claim absent damage to other property. *Town v. Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1261, 1264-1266 (Colo. 2000) (holding that a negligence claim based on allegedly defective water lines was barred by the economic loss rule where plaintiffs failed to allege damage to other property and instead sought only economic repair and replacement damages; and contrasting plaintiffs' claims with prior case law allowing negligence causes of action where defective products caused extensive damage to homes).

Indeed, "[d]amage to a product itself is most naturally understood as a warranty claim," because "[a] product that is defective [and] fails in its essential purpose implicates [only] a buyer's reasonable expectations and the promise of the seller to sell a merchantable product"—by contrast, "[i]t does not implicate a[n] [independent] duty to protect the buyer against unreasonable risk of harm" that is capable of sustaining a tort cause of action. *See Carter v. Brighton Ford, Inc.*, 251

P.3d 1179, 1184, 1187 (Colo. Ct. App. 2010) (quotations omitted). Consistent with this distinction, the Tenth Circuit has unequivocally: (i) confirmed that "the economic loss rule originated as a way of limiting damages in product liability cases where there is no physical injury or damage to other property" beyond the supposedly defective product; and (ii) held that "[p]roducts liability law generally does not create an independent duty of care" that allows a plaintiff to maintain a tort claim for "recovery of economic losses," and instead exclusively allows for "tort recovery of non-economic losses" caused by "personal injury or damage to other property" outside of the defective product. *Simantob v. Mullican Flooring, L.P.*, 527 Fed. App'x 799, 804-805 (10th Cir. 2013) (recognizing that Utah has adopted Colorado's formulation of the economic loss rule, and holding that the economic loss rule barred plaintiff's strict liability claim to the extent it sought to recover the purchase price of, and installation, removal and loss of business costs associated with, defective flooring, *even though* plaintiff did not have a direct contractual relationship with the defendants).

Here, in disregard of the foregoing law, Plaintiffs have failed to plead non-conclusory facts establishing damage to **any** person or property other than the PEX itself. For example, the FAC lacks any allegation that Plaintiffs' PEX has actually leaked and caused resulting damage to any other part of their homes. (Dkt. No. 31 ¶¶ 9–36). Instead, Plaintiffs simply assert, without more, that: (i) the PEX **itself** "is prematurely degrading, deteriorating and/or failing and suffers from microcracking"; (ii) the "UPONOR PEX has caused damage to, and the failure of" **unspecified** "plumbing systems" of **unnamed** homeowners on **unidentified** dates, purportedly resulting in **unspecified** "damage" to **unstated** "other" property; and (iii) Plaintiffs "have been caused to suffer losses and damages, including the cost of **repairing and replacing** the UPONOR PEX," despite the absence of any allegation that the specific PEX in Plaintiffs' homes has actually been repaired or removed/replaced. (*Id.* ¶¶ 11, 31, 57, 87-88). Simply put, none of these conclusory allegations

regarding purely economic losses and unspecified "other property" damage suffice to overcome the economic loss rule, particularly where: (i) Uponor has contractually agreed to provide a product free from defect in the Warranty (Beissel Decl., Ex. 1); and (ii) that Warranty is interrelated with Plaintiffs' purchase of their homes from Oakwood and SA Homes and inures to the benefit of Plaintiffs, such that there "is no independent duty to support" Plaintiffs' tort claims. *Town of Alma*, 10 P.3d at 1264–65; *see also U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 358 F. Supp. 2d 1021, 1025 (D. Colo. 2005) (the economic loss rule bars "negligence and strict liability claims where economic damage is caused by the breach of a duty voluntarily assumed in contract and which results from a failure of the purposes or expectancies under that contract.") (citation omitted).

Indeed, Plaintiffs do not allege Defendants violated any purported duty other than the "duty to exercise reasonable and ordinary care" (Dkt. No. 31 ¶¶ 79, 83, 88), *i.e.*, the exact type of alleged "duty" which the Tenth Circuit held was insufficient to overcome the economic loss rule in *Simantob*, 527 Fed. App'x at 803-804. Under these circumstances, courts routinely apply the economic loss rule to dismiss non-contract claims seeking purely economic losses, and the outcome in this case should be no different. *See also, e.g., S K Peightal Engineers, LTD v. Mid Valley Real Est. Sols. V, LLC*, 342 P.3d 868, 873 (Colo. 2015) (economic loss rule bars tort claims by both "a party to a contract that is interrelated with a defendant's duty" and "a third party beneficiary" of the contract); *Scott Co. of Cal. v. MK–Ferguson Co.,* 832 P.2d 1000, 1005–06 (Colo. App. 1991); *Zamora v. Shell Oil Co.*, 55 Cal. App. 4th 204, 211 (1997) (reversing judgment as a matter of law against manufacturer of pipe resin used  in residential plumbing systems under the rule since there was no leaking or other damage to the homes other than "degradation and micro-cracking"); *Fieldstone Co. v. Briggs Plumbing Products, Inc.*, 54 Cal. App. 4th 357, 364,

366 (1997) (dismissing strict liability claim finding defective sinks damaged only themselves and closely associated plumbing items).[7]

Accordingly, for all these reasons, Plaintiffs' strict liability and negligence claims should be dismissed pursuant to Colorado's economic loss rule.[8]

## C.    Plaintiffs Do Not Adequately Plead Causation for Their Strict Liability and Negligence Claims.

Plaintiffs have also failed to adequately plead causation in support of their strict liability and negligence claims. *See Bartholic v. Scripto-Tokai Corp.*, 140 F. Supp. 2d 1098, 1106 (D. Colo. 2000) (a plaintiff alleging strict liability must plead and prove "the defect caused the plaintiff's injuries" and that "the plaintiff sustained damages."); *Nash v. Wal-Mart Stores, Inc.*, 2017 WL 5188339, at *9 (D. Colo. Feb. 15, 2017). In violation of this fundamental pleading requirement, the FAC impermissibly: (i) speculates that the color coating process purportedly used by Uponor generally causes the PEX to experience "microcracks" and "prematurely" degrade; and then (ii) simply presumes that this alleged color coating process specifically has caused the PEX in Plaintiffs' homes to experience those performance issues. (Dkt. No. 31 ¶¶ 11–17.) Significantly, however, the FAC does **not** identify data, evidence, or other facts substantiating this hypothesis, nor does it even allege that Plaintiffs themselves have discovered "microcracks" in, or the "premature" degradation of, the PEX lines purportedly in their homes. (*Id.*) The Court cannot credit Plaintiffs' speculative conclusions and unsupported theory of causation, even at the pleading

---

[7] In both *Zamora* and *Fieldstone*, the California Court of Appeal applied the California Supreme Court's "seminal case" on the economic loss rule, *Seely v. White Motor Co.*, 63 Cal. 2d 9 (1965), which the Colorado Supreme Court likewise cited with approval in *Town of Alma*.

[8] The Court should also strike the class allegations as to Plaintiffs' tort claims. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("'a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."); *Jenkins v. CARCO Grp., Inc.*, 339 F. Supp. 3d 1223, 1231 (D. Kan. 2018) ("Because the Court dismisses Plaintiff's individual FCRA claim, her claims on behalf of the putative class must also be dismissed.").

stage. *Watson v. Vista Outdoor, Inc.*, 2016 WL 11523306, at *3 (D. Colo. June 29, 2016) (dismissing strict liability claim for failure to allege sufficient facts to establish causation); *Alley v. Aurora Loan Servs. LLC*, 2011 WL 3799035, at *9 (D. Colo. July 21, 2011) (dismissing negligence claim based on "conclusory statements and unsubstantiated assumptions").

This is especially the case in light of federal law holding that a plaintiff does not adequately allege causation by "plead[ing] facts that are merely consistent with a defendant's liability[.]" *Iqbal*, 556 U.S. at 678; *see also Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 n.8 (10th Cir. 1987) (rejecting reasoning that presumes a causal nexus between events based on nothing more than temporal sequence); *see also In re Century Aluminum Co.*, 729 F.3d 1104, 1108 (9th Cir. 2013) ("When faced with" multiple "possible explanations" for an event, "plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation – rather, "[s]omething more is needed, such as facts tending to exclude the possibility that [an] alternative explanation is true, in order to render plaintiffs' allegations plausible' at the pleading stage.").

### D.    The Implied Warranty Claim Is Barred by the Warranty and Is Untimely.

The written Warranty governing the PEX expressly disclaims the implied warranties of merchantability and fitness.  This alone bars Plaintiffs' implied warranty claims because Plaintiffs cannot have rights against Uponor that are superior to those of the original purchasers of the PEX. *See* Colo. Rev. Stat. § 4-2-318 C.R.S., Comment 1 (recognizing that contractual warranty provisions, including those that limit or exclude remedies, are "equally operative against beneficiaries of warranties"); *Wenner Petroleum Corp.*, 748 P.2d at 357 (holding that end-user was bound by contractual disclaimer of implied warranties, pursuant to § 4-2-318).

Moreover, in Colorado, claims for breach of implied warranty are governed by a three-year statute of limitations pursuant to Colo. Rev. Stat. § 4-2-725, and "a breach of warranty claim

accrues at the time delivery is made, 'regardless of the aggrieved party's lack of knowledge of the breach.'" *Klingemann v. Breg, Inc.*, 2012 WL 1378640, at *2 (D. Colo. Apr. 20, 2012). The limitations period is not tolled merely because the defendant purportedly withheld information about the product – **to the contrary, the law is clear that a plaintiff cannot avoid the limitations period through "generalized" allegations of "fraud and deceit . . . as to the public at large" without alleging that the defendant "intentionally and actively induced or tricked" the plaintiff specifically**. *Id.* at 6-8 (emphasis added).  Here, the FAC lacks any allegations that Plaintiffs were specifically exposed to, and relied upon, any representations by Uponor.  Instead, Plaintiffs only assert that Uponor has "represented that consumers should trust [it] to provide the highest quality PEX tubing" that had "superior resistance to stress-crack corrosion" and "will suffer 'no micro-cracking during expansion.'"  (Dkt. No. 31 ¶¶ 23-25).  However, these are precisely the type of generalized statements to the public at-large that are legally incapable of tolling the limitations period for a plaintiff who does not allege exposure to, or specific reliance upon, the defendant's purported representations.

Because Plaintiffs' homes were admittedly completed and delivered to them by mid-2017 – and because Plaintiffs failed to file this action until more than three years later, in July 2021 – their implied warranty claim is facially untimely as a matter of law, such that it must be dismissed, together with all related class allegations.  (Dkt. No. 31 ¶¶ 9–10). *See also Piazza v. Ebsco Indus.*, 273 F.3d 1341, 1347 (11th Cir. 2001) ("It is by now clear that a class representative whose claim is time-barred cannot assert the claim on behalf of the class.").

### E.     Plaintiffs' Proposed Class is Overbroad and Not Ascertainable.

Federal courts may dismiss or strike class allegations at the pleading stage when it is facially apparent that the class definition is "overbroad and includes class members regardless of whether they were ever injured." *Ramsay v. Frontier, Inc.*, 2021 WL 651021, at *7-8 (D. Colo.

Feb. 19, 2021); *see also John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007); *Tietsworth v. Sears, Roebuck and Co.*, 720 F. Supp. 2d 1123, 1145–46 (N.D. Cal. 2010).

Here, Plaintiffs' proposed class definition—"All persons or entities who own homes or other structures in Colorado with UPONOR PEX used as the lines and components of a potable water plumbing system"—is overbroad and not ascertainable on its face, as manifest by the fact that it: (i) includes homeowners who have not experienced leaks or "microcracks" at all, let alone actual property damage; (ii) includes homeowners who may claim to have experienced physical damage to other property in connection with PEX, unlike Plaintiffs, and thus Plaintiffs are not adequate representatives; (iii) lacks any temporal boundary; (iv) encompasses structures with colored and translucent PEX, the latter of which cannot possibly experience any of the alleged performance issues that Plaintiffs speculate are caused by the color coating process; and (v) fails to account for differences in how homes throughout Colorado are plumbed, which may affect the claimed performance of the PEX. (*See* Dkt. No. 31 ¶ 41.)

Because it is clear that proceeding on a class basis here would impermissibly require multiple mini-trials regarding the type, performance, structural integrity, color coating process (if any), and other unique circumstances applicable to each putative class member's PEX/piping system, an ascertainable class cannot be deemed to exist legally or factually, and Plaintiffs' class allegations should be dismissed/stricken entirely.  *See Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112, 1155 (D. Colo. 2019) (adopting recommendation to strike class allegations where the proposed class definition was overbroad because it included putative members who were not in fact damaged); *see also, e.g., Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (proposed class including all purchasers of fountain drinks after March 12, 1999 was not ascertainable because "[c]ountless members of [the] putative class could not show any damage, let

alone damage proximately caused by Coke's alleged deception."); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) ("[I]f class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate.").

CONCLUSION

For all of the foregoing reasons set forth herein, the Court should grant Uponor's Motion and (i) dismiss Plaintiffs' Complaint; or, alternatively, (ii) compel Plaintiffs to proceed with arbitration, or (iii) strike/dismiss the Complaint's class allegations.

Dated: November 17, 2021

/s/ *John S. Gibbs III*
John S. Gibbs III
Colorado Bar No. 51650
TROUTMAN PEPPER
HAMILTON SANDERS LLP
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
Telephone: (404) 885-3000
E-mail: evan.gibbs@troutman.com

Counsel for Uponor

**CERTIFICATE OF COMPLIANCE WITH D.C. COLO. LCivR 7.1**

On September 10, 2021, counsel for Plaintiffs and Defendants conferred telephonically regarding the substance of this Motion and were unable to resolve the issues raised by it. Plaintiffs have indicated that they will oppose the Motion.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of the above and foregoing was filed via the CM/ECF system which will serve a copy on counsel of record for Plaintiffs.

/s/ *John S. Gibbs III*
Counsel for Uponor