**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Senior Judge Raymond P. Moore**

Civil Action No. 21-cv-02057-RM-STV

JOEL W. MATZDORF;
MIKAYLA MATZDORF;
DUANGDOW C. HOYORD; and
LUKE T. HOYORD; individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

UPONOR, INC.;
UPONOR NORTH AMERICA, INC.;
DOES 1 through 100, inclusive, whose true names are unknown,

      Defendants.

---

## ORDER

---

This matter is before the Court on the Magistrate Judge's Recommendation ("Recommendation") (ECF No. 40) on Defendant's Motion to Dismiss Plaintiffs' Amended Complaint and Class Allegations, or, in the Alternative, to Compel Arbitration and Strike Class Allegations, and Brief in Support Thereof (ECF No. 33) and the Objection to the Recommendation filed by Defendants Uponor, Inc. and Uponor North America, Inc., (together "Uponor") (ECF No. 43). In their Amended Complaint, Plaintiffs Joel Matzdorf, Mikayla Matzdorf, Duangdow Hoyord, and Luke Hoyord (together "Plaintiffs") allege that Uponor manufactured and distributed certain red- and blue-colored cross-linked polyethylene tubing ("PEX") that suffers from certain design and/or manufacturing defects that cause premature damage, degradation, deterioration, and failure of the PEX. (ECF No. 31.) Based on those allegations, Plaintiffs bring claims for strict product liability, breach of the implied warranty of

merchantability, and negligence. (Id.) They also make allegations that they say support the maintenance of this case as a class action pursuant to Fed. R. Civ. P. 23. (Id.)

For the reasons stated below, the Court finds and concludes as follows.

## I.   FACTS AND PROCEDURAL HISTORY[1]

As previously noted, this case revolves around what Plaintiffs argue is PEX tubing that suffers from certain manufacturing defects. The named plaintiffs are all homeowners who reside in homes in which Uponor's PEX was used in the potable water plumbing system. Both the home of the Matzdorf Plaintiffs and that of the Hoyord Plaintiffs were completed in 2017 and were initially constructed using PEX. Plaintiffs state that the PEX in their homes "is prematurely degrading, deteriorating and/or failing and suffers from micro-cracking." Homebuilders apparently utilize Uponor's PEX, or similar products, because it is flexible and easy to install, and the color coding allows water lines to be more easily identified as hot (red) or cold (blue).

Plaintiffs allege that the Uponor PEX was manufactured in a different manner than that used by most other manufactures. While, according to Plaintiffs, most manufactures mix the color pigments along with antioxidant stabilizers to the plastic formulation during extrusion, prior to cross-linking, Uponor instead adds an exterior coating of color after extrusion is complete. Plaintiffs contend that this difference is the source of the problem, arguing that Uponor uses a patented process that puts the PEX through an oxidizing step which allows the outer coating to stick to the pipe. This process is achieved by running the tube through a furnace/flame which, Plaintiffs argue, destroys the antioxidants in the tubes, subjecting it to damage and causes premature failure "in the form of, among other things, oxidative degradation,

---

[1] Unless otherwise noted, the facts in this Order are taken from Plaintiffs' Amended Complaint (ECF No. 31), which this Court takes as true for the purpose of evaluating a motion to dismiss. *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126-27 (10th Cir. 1998).

micro cracking, cracking, through-wall cracking, leaks and other property damage." They state that the Uponor PEX becomes brittle and develops microcracks during installation. Ultimately, Plaintiffs state, these microcracks expand and result in leaks as well as "significant damage to other property, loss of use of the plumbing system, and/or preventing the plumbing system from functioning as intended."

Uponor filed the previously-mentioned Motion to Dismiss Plaintiffs' Amended Complaint and Class Allegations, or, in the Alternative, to Compel Arbitration and Strike Class Allegations. (ECF No. 33.) In it, Uponor made a number of different arguments as to why the Complaint should be dismissed, arguing first that Plaintiffs lack standing under Article III of the Constitution because they have failed to plead any facts establishing that they suffered any injury in fact. Second, Uponor asserts that Plaintiffs' Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. In support of that argument, Uponor argues that (1) Plaintiffs have failed to plead facts establishing the essential element of damages; (2) the economic loss rule bars Plaintiffs' tort claims because they must recover any damages for the cost of the allegedly defective product under the contract; (3) Plaintiffs fail to adequately plead causation for the strict liability and negligence claims; and (4) the implied warranty claim is barred by the warranty in the contract and is untimely.

Uponor also argues that Plaintiffs should be compelled to arbitrate their claims, as the sale contract for the PEX was subject to a written limited product warranty (the "Warranty") to which, Uponor argues, Plaintiffs are bound as intended third-party beneficiaries. Uponor further argues that the arbitration provision covers Plaintiffs' claims here. Finally, Uponor argues that Plaintiffs' proposed class is overbroad and not ascertainable, therefore requiring the Court to strike those allegations.

3

Plaintiffs filed a Response in which they address each of Uponor's arguments (ECF No. 35) and Uponor filed a Reply (ECF No. 36).  This Court referred the Motion to the Magistrate Judge (ECF No. 34), who subsequently issued his Recommendation (ECF No. 40).  Uponor timely objected to the Recommendation (ECF No. 43), Plaintiffs filed a Response (ECF No. 44), and Uponor filed a Reply (ECF No. 45) to which Plaintiffs objected (ECF No. 46).

## II.   LEGAL STANDARDS

### A.   Review of the Magistrate Judge's Recommendation

When a magistrate judge issues a recommendation on a dispositive matter, Fed. R. Civ. P. 72(b)(3) requires that the district court judge "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to."  Upon review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.*  In the absence of a timely and specific objection, "the district court may review a magistrate's report under any standard it deems appropriate."  *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citations omitted); *see also* Fed. R. Civ. P. 72 Advisory Committee's Note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."

### B.  Rule 12(b)(1) Motions to Dismiss

A motion to dismiss under Rule 12(b)(1) tests whether the court has subject matter jurisdiction to properly hear the case before it.  The party invoking the court's jurisdiction bears the burden to establish that federal jurisdiction exists, and "since the courts of the United States are courts of limited jurisdiction, there is a presumption against its existence."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Rule 12(b)(1) motions generally take two forms. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). The first form is a facial attack that challenges the sufficiency of the complaint's allegations as to subject matter jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). The court accepts the allegations in the complaint as true when reviewing a facial attack. *Id.*

The second form is a factual attack that goes beyond the allegations in the complaint and challenges the facts on which subject matter jurisdiction is based. *Id.* at 1003. Unlike a facial attack, the court does not presume the truthfulness of the complaint's factual allegations when reviewing a factual attack. *Id.* "A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* (citation omitted). And "a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion[,]" unless the jurisdictional issue is intertwined with the merits of a plaintiff's case. *Id.* "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Id.*

One manner in which a court may be divested of jurisdiction to hear a case is through a demonstration that the plaintiff lacks standing to bring the case. Under Article III of the Constitution, courts are limited to hearing only actual "cases" and "controversies." U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The Supreme Court's standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *The Wilderness Soc'y. v. Kane Cty.*, 632 F.3d 1162, 1168 (10th Cir. 2011) (en banc) (quotation, citation, and ellipsis

omitted).  To have Article III – constitutional – standing, "the plaintiff must show that the conduct of which he complains has caused him to suffer an injury in fact that a favorable judgment will redress."  *Id.* (quotation, citation, and brackets omitted).  In other words, a plaintiff must plausibly allege 1) an injury in fact, 2) fairly traceable to defendant's conduct, 3) that is redressable by a favorable judicial decision.  *See VR Acquisitions, LLC v. Wasatch Cty.*, 853 F.3d 1142, 1146 (10th Cir. 2017).  To demonstrate an "injury in fact," a plaintiff must demonstrate "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'"  *Lujan*, 504 U.S. at 560 (quotation and citations omitted).  In the context of a claim for damages, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of the future harm itself causes a *separate* concrete harm."  *TransUnion LLC v. Ramirez*, 494 U.S. 413, 436 (2021) (emphasis original).

Article III standing is jurisdictional; it is properly raised under Rule 12(b)(1).  *In re Peeples*, 880 F.3d 1207, 1212 (10th Cir. 2018); *see Kerr v. Polis*, 930 F.3d 1190, 1194 (10th Cir. 2019) (recognizing dismissal under Rule 12(b)(1) is based on lack of subject matter jurisdiction). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."  *Lujan*, 504 U.S. at 561 (quotation omitted).  The same is not true when the issue arises in the context of, for example, a summary judgment motion, at which time the plaintiff must set out, "by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.* (quoting Fed. Rule. Civ. P. 56(e)).  "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Specific facts

are not necessary; the statement need only give the defendant fair notice of what the  . . . claim is

and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quotations and

citations omitted, alteration original).

### C.  Motions to Compel Arbitration

The existence of an arbitration agreement is a question reviewed under the principles of

contract interpretation.  *Ragab v. Howard*, 841 F.3d 1134, 1137 (10th Cir. 2016).  "The right to

compel arbitration of a dispute is derived from contract.  Thus, one who is not a party to the

contract generally cannot compel, or be compelled to participate in, arbitration." *Parker v.

Center for Creative Leadership*, 15 P.3d 297, 298 (Colo. App. 2000).  "However, a nonparty,

such as a third-party beneficiary, may fall within the scope of an arbitration agreement if the

parties to the contract so intend." *Id.*  "Courts cannot create or enforce contracts between parties

when the contract itself does not clearly demonstrate the parties' intent." *Ragab*, 841 F.3d at

1137.

In order to compel arbitration, "Defendants must present evidence sufficient to

demonstrate an enforceable arbitration agreement." *Stein v. Burt-Kuni One, LLC*, 396 F.Supp.2d

1211, 1213 (D. Colo. 2005).  If Defendants satisfy that burden, then Plaintiffs must demonstrate

a genuine issue of material fact as to the making of an agreement, "using evidence comparable to

that identified in Fed. R. Civ. P. 56." *Id.*  If Plaintiffs demonstrate a genuine issue of material

fact, "then a trial on the existence of the arbitration agreement is required." *Id.*

### III.    ANALYSIS

Magistrate Judge Varholak reviewed the Motion to Dismiss and the briefing, as well as

the case file and the applicable caselaw and issued his Recommendation that the Motion be

denied.  (ECF No. 40.)  He concluded, first, that Plaintiffs had made a sufficient number of

affirmative allegations of damages to demonstrate Article III standing in this case.  More specifically, he found that "Plaintiffs have alleged that: (1) their PEX pipes are themselves damaged and (2) their homes or other property have experienced damage."  (Id. p.11.) Magistrate Judge Varholak went on to distinguish the cases cited by Uponor and therefore recommended that the Motion to Dismiss be denied.

He then turned to the question of whether Plaintiffs should be compelled to arbitrate their case.  He noted that, as an initial matter, he was required to determine whether an agreement to arbitrate exists.  Acknowledging both that Uponor's Warranty contains an arbitration clause, and that Uponor contended Plaintiffs were bound as third-party beneficiaries of that Warranty, he concluded that Uponor had failed to present sufficient evidence that *any* contract was formed with *any* person or entity.  The Magistrate Judge pointed out that the only evidence presented by Uponor was a declaration from a single employee, and that employee had no connection with the installation of the PEX in Plaintiffs' homes.  Thus, he concluded that Plaintiffs had "identified an issue of fact as to the existence of the underlying contract," and therefore recommended that the Motion to Compel Arbitration be denied, and that the matter proceed to a summary trial on the existence of an arbitration agreement.  (Id. p.21.)  Finally, Magistrate Varholak concluded that because he recommended that the matter proceed to trial on the question of whether an arbitration agreement exists, he did not need to address Uponor's argument "regarding the scope of the arbitration agreement, nor their arguments that Plaintiffs have failed to state certain claims and class allegations."  (Id.)

Uponor timely objected to the Magistrate Judge's Recommendation.  (ECF No. 43.) Uponor argued that Magistrate Judge Varholak's Recommendation was predicated on certain factual and legal errors and urged the Court to reject it.  Specifically, Uponor again argued that

Plaintiffs had failed to adequately plead Article III standing, asserting that the First Amended

Complaint "lacks any allegation that Plaintiffs themselves—as opposed to other unnamed class

members—have actually experienced any specific leak or other performance issues involving the

Uponor PEX, or have suffered any specific damage to their homes or other property as a result of

the Uponor PEX." (Id. p.2.) Uponor argued that the Recommendation erred in finding Article

III standing based on "conclusory allegations of damages," and "bare assertion[s] that a product

suffers from a defect," without accompanying facts to substantiate that assertion. (Id.) Uponor

also contended that the Magistrate Judge incorrectly found that this Court should conduct a

summary trial regarding the existence of an arbitration agreement. Uponor argued that the

existence of a contract was demonstrated by Plaintiffs' own claim of breach of the implied

warranty of merchantability, which claim is based in contract. Uponor also stated that the

unrefuted evidence was that all of its PEX sold in the United States "was sold 'subject to' a

Warranty containing the operative arbitration provision." (Id. p.3.)

      Plaintiffs responded that Uponor was mistakenly relying on cases assessing standing at

the summary judgment phase, rather than at the pleading stage when the requirements for factual

support are less stringent. (ECF No. 44.) Plaintiffs then also reiterated the factual allegations

that, they argued, support a finding of Article III standing. Plaintiffs also asserted that the

Recommendation correctly concluded that Uponor had failed to present evidence that a contract

had been formed that contained the arbitration provision. Plaintiffs disputed Uponor's argument

that the fact that they brought a claim for breach of the implied warranty of merchantability

constituted a judicial admission of the existence of a contract. Thus, Plaintiffs asserted that

Magistrate Judge Varholak had correctly recommended that this Court hold a summary trial on

the existence of a valid arbitration agreement.

Uponor filed a Reply (ECF No. 45) to which Plaintiffs objected (ECF No. 46).  The Court has reviewed all of the filings and now concludes as follows.

### A.  Article III Standing

As Magistrate Judge Varholak laid out clearly, Plaintiffs have made a number of allegations of personal injury caused by Uponor's allegedly defective PEX.  Specifically, they state that (1) the PEX in *their* homes is prematurely degrading; (2) the PEX has "caused damage to, and failure of, plumbing systems," which *has caused Plaintiffs* and the class members to incur damages; (3) the PEX directly and proximately caused *damages suffered* by *Plaintiffs* and the members of the class; (4) *Plaintiffs* and the members of the class *have suffered damages*, including damages to other property, as a result of Uponor's conduct; (5) *Plaintiffs* and the members of the class *have suffered losses and damages* including *damage to their homes, businesses, and personal property due to leakage*; and (6) *Plaintiffs* and class members have suffered *out-of-pocket losses from damage to their homes and structures*, including the cost of *repairing leaks* and *repairing or replacing damaged personal and/or real property*.  (ECF No. 31 at ¶¶ 11, 31, 57, 68, 87, 88, 97, emphases added.)  Clearly, Plaintiffs have alleged that they already have been personally injured by the purported defects in the PEX.

The Court understands Uponor also to argue that any such allegations lack the adequate *specificity* to support those claims.  Plaintiffs do not state, for example, when or where they suffered leaks or other failures of their plumbing that they attribute to the PEX.  They do not state the nature of the property damage sustained, or even guess the costs of repairing or replacing damaged property.  The Court concludes, however, that Uponor asks it to impose a more stringent standard than that required under the Rules at the pleading stage.  As the Supreme Court has stated on more than one occasion, at the pleading stage the judge must accept as true

all factual allegations contained in the complaint, and general allegations of injury will satisfy the test at that point.  *See Erikson*, 551 U.S. at 93-94; *Lujan*, 504 U.S. at 561; *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) (noting that "general allegations of the complaint . . . may well have sufficed to claim injury by named plaintiffs, and hence standing to demand remediation" at the pleading stage, though they were not adequate to support a jury verdict following trial).  As the Supreme Court explained in *Erickson*, "in the final analysis" it may be that the Court should grant Uponor's Motion to Dismiss, but at this stage the liberal pleading requirements of the Federal Rules do not require more specificity.  551 U.S. at 93-94 (concluding that prisoner's allegation that his medication was withheld "shortly after" he began treatment and that he was "still in need of treatment for [his] disease," which prison officials refused to provide, was sufficient to demonstrate standing at the pleading stage).  Given the liberal pleading standards and the early stage of the litigation, the Court concludes that Plaintiffs' allegations satisfy the requirements.

Uponor's other argument seems to be that Plaintiffs have only alleged the possibility of *future* damage, which is inadequate to establish an injury in fact for standing purposes.  But again, the Court disagrees.  Plaintiffs clearly have mentioned prospective damages, but they have also stated plainly that they have already suffered harm—they state that Uponor's conduct "*caused*" damages to Plaintiffs' homes and out-of-pocket losses, that Plaintiffs "*have been caused to suffer*" losses and damages due to leakage, and that Plaintiffs "*have suffered damages*" to other property.  (ECF No. 31, ¶¶ 87, 88, 97.)  While Plaintiffs' claims are not filled with detail, the Court concludes that at *this stage*, the allegations are sufficient to established Article III standing.  The Court therefore ADOPTS the Recommendation on this point and DENIES the Motion to Dismiss.

### B. Arbitration Agreement

As Magistrate Judge Varholak explained in his Recommendation, arbitration agreements are matters of contract, and a party cannot be compelled to arbitrate in the absence of a valid contract to do so. *Parker*, 15 P.3d at 298. Thus, in order to compel Plaintiffs to arbitrate this case, Uponor must demonstrate not only the existence of a contract that binds Plaintiffs, whether as signatories or as third-party beneficiaries, but also the existence of an arbitration agreement as a part of that contract.

In this case, Uponor argues that the sale of PEX to the developers who constructed Plaintiffs' homes was made pursuant to a contract. Uponor also persuasively claims that Plaintiffs implicitly acknowledge the existence of such a contract because they have chosen to bring a claim that sounds in contract. Uponor has not, however, submitted any copy of such a contract for this Court's review. Thus, even assuming that the contract does exist, the Court can only guess at its terms. Uponor asserts that the affidavit attached to its Motion to Dismiss, as well as the copy of the Warranty, also attached to the Motion, demonstrate that any such contract included the Warranty and its arbitration agreement as part of its terms. The affidavit states that "[a]ll PEX sold by Uponor in the United States between October 15, 2012 and the present, including the blue and red PEX referenced in Plaintiffs' Complaint, is subject to and governed by a written limited product warranty." (ECF No. 33-1.)

"Contract formation in Colorado requires evidence that the parties agreed upon all essential terms." *Ragab*, 841 F.2d at 1137 (quotation omitted). "Courts cannot create or enforce contracts between parties when the contract itself does not clearly demonstrate the parties' intent." *Id.* "The party attempting to compel arbitration bears the burden of demonstrating that a valid arbitration agreement exists." *Vaughn v. JP Morgan Chase & Co.*, No. 23CV02266-CNS-

NRN, 2023 WL 8702090, at *3 (D. Colo. Dec. 15, 2023).  Courts "give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Hancock v. American Tel. and Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (quotation omitted).

In this case, the Court agrees with Uponor that Plaintiffs have clearly brought a claim for relief premised on the existence of a contract of some kind.  *See Forest City Stapleton Inc. v. Rogers*, 393 P.3d 487, 490 (Colo. 2017) (noting that "[b]y their very nature, these implied warranties are contractual obligations, and thus breaches of these implied warranties give rise to contract claims.")  And a party may not seek to enforce the benefits of a contract without also subjecting itself to the duties and obligations that also arise under the same contract.  *Parker v. Center for Creative Leadership*, 15 P.3d 297, 298-99 (Colo. App. 2000).  The *terms* of the contract, however, are unclear.  The burden was on Uponor to present evidence proving the existence of a binding arbitration agreement, and instead Uponor has offered only one conclusory statement that sales of PEX were "subject to" the Warranty that, in turn, contained the arbitration provision.  As Magistrate Judge Varholak explained in his Recommendation, the evidence provided by Uponor fails to demonstrate that either of the developers who built Plaintiffs' homes was even aware of the Warranty.  The terms of the contracts at issue would likely provide the requisite evidence regarding the parties' intent regarding the Warranty, and Uponor has the readiest access to any such contract.  But because Uponor has not provided that evidence to the Court, and because the Court must give Plaintiffs, as the party opposed to arbitration, the benefit of all reasonable doubts and inferences, it must conclude that Uponor has failed to meet its burden of proving the existence of a binding arbitration agreement.

"When the parties dispute the making of an agreement to arbitrate, a jury trial on the existence of the agreement is warranted unless there are no genuine issues of material fact

regarding the parties' agreement." *Hardin v. First Cash Financial Svcs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006). The Court therefore again OVERRULES Uponor's objection and ADOPTS the Magistrate's Recommendation and DENIES Uponor's Motion to Compel Arbitration at this time. This matter will proceed to a trial to determine the existence of an arbitration agreement.

## IV.    CONCLUSION

Given the Court's resolution of these questions, it need not address Uponor's remaining arguments regarding the scope of any arbitration agreement, the assertion that Plaintiffs have failed to state a claim upon which relief can be granted and the contention that the Court should strike the class allegations. Based on the foregoing, the Court:

1. OVERRULES Defendant's Objection to the Recommendation (ECF No. 43);

2. ADOPTS the Magistrate Judge's Recommendation (ECF No. 40);

3. DENIES Defendant's Motion to Dismiss Plaintiffs' Amended Complaint and Class Allegations, or, in the Alternative, to Compel Arbitration and Strike Class Allegations (ECF No. 33); and

4. ORDERS that counsel for the Parties jointly contact the Court's Judicial Assistant via email (Deanne_bader@cod.uscourts.gov) on or before the close of business on March 21, 2024 to obtain trial dates.

DATED this 20th day of March, 2024.

BY THE COURT:

RAYMOND P. MOORE
Senior United States District Judge